## ZANCANELLI v. CENTRAL COAL & COKE CO.

(No. 933;  Decided July 11th, 1918;  173 Pac. 981.)

STATUTES — CONSTITUTIONAL LAW — REPUBLICAN FORM OF GOVERN-
MENT—POLITICAL QUESTIONS—MASTER AND SERVANT—WORKMEN'S
COMPENSATION LAW — TRIAL BY JURY — DUE PROCESS OF LAW —
POWER TO CHANGE RULES OF THE COMMON LAW BY LEGISLATION—
PROPERTY RIGHTS—POLICE POWER—STATE ADMINISTERED INSUR-
ANCE FOR INJURED WORKMEN—SUBSTITUTED RIGHTS OF COMPENSA-
TION FOR INJURIES—JUDICIAL QUESTIONS—NEGLIGENCE—CLASSIFI-
CATION OF EMPLOYMENTS—ATTORNEY'S FEE—THEORY OF COMPEN-
SATION LAWS — DIVISION OF POWERS — DEPENDENTS — STATUTORY
CONSTRUCTION—CONSTITUTIONAL AMENDMENTS—CONSTRUCTION OF
CONSTITUTIONAL AMENDMENTS.

1. A statute will not be declared void on constitutional grounds
   unless the validity and nullity thereof be apparent beyond
   reasonable doubt.

2. Whether a statute violates the guarantee to each of the
   states of a republican form of government as set forth in
   Constitution United States, Art. IV, Section IV, is not a
   judicial, but a political question committed to Congress
   and not to the courts.

3. Laws 1915, Chapter 124, as amended by Laws 1917, Ch. 69,
   known as the "Workmen's Compensation Law," is not in
   violation of the seventh amendment of the Constitution of
   the United States, preserving the right of trial by jury,
   there being nothing in the act excluding a jury trial in
   actions involving private rights. As between employer and
   employee, the act abolishes all rights of recovery for in-
   jury or death from accident in extra-hazardous employ-
   ments by the substitution of new rights, leaving nothing
   to be tried by a jury.

4. Laws 1915, Chapter 124, as amended by Laws 1917, Ch. 69,
   known as the "Workmen's Compensation Law," requiring
   employers to contribute to a common fund, for the com-
   pensation of injuries to workmen, irrespective of whether
   such injuries were caused by the negligence of such em-
   ployer, held not a violation of the fourteenth amendment
   to the Constitution of the United States, as a deprivation
   of property without due process of law, since:

(a) The doctrine of compensation in damages for negligence
    with its attendant rules and doctrines as to fellow servants,
    assumption of risks, contributory negligence and the like,
    are but rules of law evolved from court decisions from

time to time, that may be changed or abolished by legislative enactment;

(b) A person has no property, no vested interest in any rule of the common law;

(c) While rights of property created by the common law cannot be taken away without due process, the law itself, as a rule of conduct, may be changed by legislation unless prevented by constitutional limitation;

(d) The office of statutes is to remedy defects in the common law as they are developed and to adapt it to the changes of time and circumstances;

(e) The authority of the states to enact police regulations deemed necessary to promote the health, safety and general welfare of their people, carries with it a wide range of judgment and discretion, as to what matters are of sufficient general importance to be subjected to state regulation and administration.

(f) It cannot be deemed arbitrary or unreasonable for the state, instead of imposing upon the particular employer entire responsibility for losses, occurring in his own plant or work, to impose the burden upon the industry through a system of occupation taxes limited to the actual losses occurring in the respective classes of occupation.

5. Questions of policy are for the Legislature, not for the courts. Whether the plan adopted for the compensation of injured workmen by Laws 1915, Chapter 124, as amended by Laws 1917, Ch. 69, is the most appropriate or best calculated to accomplish those objects, is a matter with which the courts are not concerned, and the law should not be held invalid unless found to be in violation of some provision of the Constitution.

6. Laws 1915, Chapter 124, Section 16, known as the "Workmen's Compensation Law," exempting an employer from contributing to the accident fund whenever his prior payments, less deductions made on account of his injured employees, shall equal a stated percentage of his current pay roll and not less than $5,000.00, held to be such an inducement to reduce the chance of accident, as to render an exception to the law on the ground that careful employers and employees are required to suffer for acts of negligent employers and employees, not well taken.

7. The provisions of the Workmen's Compensation Law, Laws 1915, Chapter 124, as amended Laws 1917, Chapter 69, with reference to the classification of employments, held to be a sufficient compliance with the requirements of the

State Constitution, Art. X, Section 4, as amended, directing the compensation of injured workmen to be "as may be fixed by law according to proper classifications," since the language of the amendment shows that it was intended that the Legislature should decide what should be a proper classification.

8. While Section 19, Subdivision c, of the Workmen's Compensation Law, precluding compensation for the first ten days of disability, is undoubtedly a proper classification and regulation within the provisions of Constitution, Art. X, Section 4, as amended, only one applying for compensation under the Act, who had been refused compensation for the first ten days, may urge the point as an objection to the law.

9. The provisions of Section 12 of the Workmen's Compensation Law, limiting fees chargeable by attorneys for services in aid of claimants under the law to a sum not exceeding $50.00, held to be a reasonable measure of protection for claimants seeking benefits under the law.

10. The apparent intent and purpose of the Workmen's Compensation Law is not to give compensation as damages, but to award relief in the nature of accident insurance, the plan of assessment insurance being closely followed and losses reckoned as a part of the cost of the industry and the power to fix a schedule of rates being clearly within the discretion of the legislature, the courts will not restrain nor enlarge upon the exercise of that power.

11. The provision incorporated in the Workmen's Compensation Law that minor children of injured workmen over the age of sixteen years shall not be considered dependents, unless physically or mentally incapacitated from earning a livelihood, held to be a reasonable limitation, in view of the general purpose and intent of the law.

12. Whether the provision that non-resident, alien dependents shall receive under the Workmen's Compensation Law, but thirty-three per cent (33%) of the amount allowed dependents who are residents of the state, is in conflict with Art. X, Section 4, of the State Constitution, as amended, is a question not presented by the issues in the present case.

13. The general principles governing the construction of statutes are applied to the construction of Constitutions, the fundamental purpose being to ascertain the intent of the framers and the people who adopted it, and to give effect thereto. An amendment will prevail over a provision of the original constitution inconsistent with the amendment.

14. A constitutional amendment being the latest expression of the will of the people cannot be limited or controlled by previous existing provisions of the Constitution. In construing the amendment, the court should keep in view the Constitution, as it was before it was amended, the evils to be remedied and the terms of the amendment.

15. Laws 1915, Chapter 124, as amended by Laws 1917, Chap. 69, known as the "Workmen's Compensation Law," in all of its general provisions is in accord with the system of compensation acts that were in the minds of the people adopting the amendment to our State Constitution, and is justified in all respects by that amendment being in no wise in conflict with any provision of either the Constitution of the United States or of the State of Wyoming.

ERROR to the District Court, Sweetwater County; HON. JOHN R. ARNOLD, Judge.

Action by M. Zancanelli to recover damages from Central Coal & Coke Company for personal injuries sustained while in its service due to the negligence of the company.

*Fred W. Johnson* and *Walter A. Muir,* for plaintiff in error.

The Workmen's Compensation Law seeks to take private property of persons engaged in a lawful enterprise not by judicial action, but by legislative declaration, thus confusing the republican form of government and violating Section 4, Art. IV, of the Constitution of the United States, and for that reason is void. (Calder v. Bull, 3 Dall. 386.) The government cannot be deemed to be free when the rights of property are left dependent upon the will of a legislative body without restraint. (Wilkinson v. Leland, 2 Peters, 627.) Under out system of government the division of powers is made distinct and one branch is not permitted to encroach upon the powers confided to the others. (Kilbourn v. Thompson, 13 Otto, 168.) The act also excludes the right of trial by jury and thereby is in violation of the seventh amendment of the Federal Constitution. The right of trial by jury is a fundamental principle of the common law. (Parsons v. Bedford, 13 Peters, 433; Maxwell v.

Dow, 176 U. S. 581.) The act violates the fourteenth amendment of the Constitution of the United States in requiring employers engaged in certain and enumerated occupations to contribute to a fund for the benefit of injured employees without regard to. any wrongful act of the employer, making him liable from the mere fact that he employs the person injured, thus depriving him of his property without due process of law and denying him the equal protection of the laws. Due process of law is an administration of the law of the land and an opportunity to be heard as to liability under the basic principles of law. (Dartmouth v. Woodward, 4 Wheat. 517; State v. Strasburg, 60 Wash. 106, 110 Pac. 1020; Joliffe v. Brown, 14 Wash. 155, 44 Pac. 149.) No principle involving the public health, safety, morals or general welfare is presented by the act upon which it may be sustained as a valid exercise of police power. (Lochnor v. New York, 198 U. S. 45; Louisville & N. R. R. Co. v. Baldwin, 5 So. 311, 85 Ala. 619.) An act creating liability for the killing of live stock without regard to negligence or wrongful act was held to be void. (Wadsworth v. U. P. R. R., 18 Colo. 600, 33 Pac. 515; see also Denver Ry. v. Outcalt, 31 Pac. 177; Gulf Railway v. Ellis, 165 U. S. 150; Zeigler v. Southern and Northern Ry. Co., 58 Ala. 594; Birmingham v. Parsons, 13 So. 602, 100 Ala. 662; Gibbs v. Tally, 65 Pac. 970; Railway Co. v. Morris, 65 Ala. 193; Bilenberg v. Railway Co., 8 Mont. 271, 20 Pac. 314; Bennett v. Ford, 47 Ind. 264; Lewis v. R. Co., 19 N. W. 744; Colon v. Lisk, 47 N. E. 302; Calif. Co. v. Sanitary Works, 126 Fed. 29; State v. Dalton, 46 Atl. 234; State v. Redmon, 14 L. R. A. N. S. 229; Lawton v. Steele, 152 U. S. 137.) The case of Nobel State Bank v. Haskell, 219 U. S. 104, dealt with a public business, viz.: the regulation of banking. It did not enunciate a wider principle. (Engel v. O'Malley, 219 U. S. 128.) Compulsory compensation is not a thing which the interests of the public generally require. This is shown by the elective clauses in many other acts approved by the courts. (Bargins v. Falk Company, 147 Wis. 327, 133 N. W. 209; State v. Creamer, 85 Ohio State, 349,

97 N. E. 602; Sexton v. Newark District Telegraph Company, 86 Atl. 451; Deibeikis v. Link-Belt Company, 261 Ill. 454, 104 N. E. 211; In re. Opinion of Judges, 209 Mass. 607, 96 N. E. 308; Kentucky Co. v. Board, 170 S. W. 1166; Cunningham v. Northwestern Improvement Company, 119 Pac. 554; Matheson v. Street Railway Co., 148 N. W. 71; Ives v. South Buffalo Railroad Company, 201 N. Y. 271, 94 N. E. 431; State ex rel. v. Clausen, 117 Pac. 1101; Shade v. Ash Grove Portland Lime & Cement Co., 144 Pac. 249.) A bulletin issued by the United States Bureau of Labor Statistics, December 23rd, 1913, shows twenty-two states having compensation laws, of which nineteen are elective, two compulsory with elective features and but one compulsory. The act is unconstitutional in requiring compensation irre- -spective of negligence, in the payment of contributions to a common fund to pay for injuries caused by the negligence of other employers, thus leaving no inducement for the exercise of care for the safety of employees. The right to be protected from injury caused by the negligence of an employer is a property right, which this act takes away without due process of law. While compulsory acts have been sustained in the states of New York, Washington, Montana and California, and recently by a decision of the United States Supreme Court, in Mountain Timber Company v. Washington, 243 U. S. 219, 37 Supreme Court Reporter, 260, 267, by a divided court, it cannot be said that the weight of opinion preponderates in favor of such a law; the act is objectionable in that it does not conform to the Wyoming Constitution in the classification of employments; it is further objectionable in not allowing compensation for the first ten days of disability and in conflict with the Constitution requiring the Legislature to provide by law for the compensation of each person injured. While Section 12 provides that the employer may employ counsel, the employee is deprived of that right, being required to rely upon the services of the county attorney, or accept services of an attorney appointed by the court who cannot be paid more than $50.00. The schedules of compensation are scarcely more

than one-half of the rates allowed in other states.  To sustain the act as an exercise of police power, the rates must be shown to be reasonable, whereas the rates prescribed by this act are grossly unreasonable.  Injured employees are not permitted to receive any portion of their compensation while under the care of a physician, except at the option of a physician, manifestly an unfair and unjust provision.  Section 26 deprives injured employees of the right of privileged communications between physician and patient.  The act is void, it being in conflict with the due process and equal protection clauses of the Constitution of the United States and of the Wyoming Constitution set out in the pleadings.

*T. S. Taliaferro, Jr.,* for defendant in error.

*Herbert V. Lacey* and *John W. Lacey,* appearing as *amici curiae,* and also representing certain employers.

For many years it has been felt more and more that the question of compensation for persons engaged in hazardous employment should receive a new investigation and if possible a new adjustment.  Many distinctions and refinements had grown up in the administration of the common law remedies, which necessarily excluded recoveries of damage by those injured through the negligence of a foreman or superior servant, or through the negligence of a fellow servant of the same rank as themselves or had assumed certain risks.  The negligence rule excluded a far larger list.  Complicated machinery and appliances had created hazards in industry outside the ordinary class of injuries caused by negligence of anyone; a class of injuries constantly increasing in number.  The result of it all was that the law in a vast majority of cases left the servant and his family to bear the entire burden of his injury.  The situation caused a great amount of litigation between injured servants and their employers resulting in strained relations, and even so, the proportion of injured servants who were able to obtain any remedy whatever was small.  The public, burdened by incapacitated servants, had a vital interest in the matter since many dependent families required support by public taxa-

tion. It is desirable to eliminate friction between employer
and his servants and in having industry proceed at normal
capacity in the general interest of prosperity and public well
being. It became apparent that each industry should care
for its own burdens, even though the consuming public
should be required to bear a just portion of the loss. Com-
pensation acts are an expression of the great need of reform
in industrial relations, many of the states having enacted
laws of this class without express constitutional authority
and these laws have in many instances been tested in the
state courts of last resort. The case nearest to the case at
bar was tried and determined by the Supreme Court of the
State of Washington and afterwards affirmed by the Su-
preme Court of the United States. While the questions
arising in the Washington case more nearly resemble the
controversy here, a marked distinction is observable in that
the Constitution of the State of Washington had not au-
thorized the enactment of a Workmen's Compensation Law.
In Wyoming the people through their Constitution have not
only authorized the Legislature to enact such a measure,
but commanded that it be done. Moreover the Washington
law, while compelling the careful employer to share in the
burden of the losses caused by the careless employer, pro-
vides no reward in the way of decreased cost such as should
be awarded him for his care, and the careless employer suf-
fers no penalty in the way of increased cost, such as should
be visited upon him as a penalty for his carelessness. These
differences make a very great difference in the constitution-
ality of the Wyoming statute. Section 16 of the Wyoming
law makes it plain that each employer bears only his own
burdens and when he keeps the losses caused by his own
business fully paid up with the margin in the treasury re-
quired by the Act, he is not obliged to make any further
payments into the treasury, and the margin which the Act
requires as a safeguard and which must be kept in the
treasury cannot justly be held to be excessive. Necessarily
a very broad discretion must be allowed by the Legislature
in fixing the amounts of compensation. The schedule in

the Wyoming law in its practical operation requires the coal companies of the state, for example, to pay about double the amount they were required to pay in expenses and costs of litigation and judgments brought for injuries under the old system. Another point that may be urged in favor of the schedule is the fact that the great body of workmen in the state not only urged the passage of the amendment, but preferred that the present statute be sustained as constitutional on the ground that it is better for the workmen themselves, even on the present scale, than to return to the old system. The Washington statute, which is not as carefully guarded, nor as just in its operation, as ours, has been sustained even without a constitutional provision for its enactment. It was sustained on the ground that it is a valid exercise of police power of the state. (State v. Mountain Timber Company (Wash.), 135 Pac. 645.) In view of our constitutional provision passed by the people after full discussion, and with our police power in full vigor, it would seem that there can be no question as to the constitutionality of our Act and its validity under the Federal Constitution is set at rest by the decision of the Supreme Court in Mountain Timber Company v. Washington, 243 U. S. 219.

*Thomas P. Fahey, amicus curiae,* and appearing on behalf of the workingmen.

The Wyoming Workmen's Compensation Law is based upon the provisions of an amendment to the State Constitution, Section 4 of Article X, adopted by the people at the election in 1914. The clear intent of the Legislature and the parties most interested, viz.: the employer and employee, as well as the intent of the people of the state in voting for the amendment, was to secure a law that would abolish the right of trial by jury in actions coming within the provisions of the law and give in lieu thereof compensation according to rates established by the law in cases of injury not caused solely by the culpable negligence of the employee. If the power to do away with the cause of ac-

tion exists, then the right of trial by jury is no longer in-
volved, jury trial being incidental to the right of action.
(State v. Clausen, 65 Wash. 165, 117 Pac. 1119.)   As be-
tween employer and employee the Act abolishes all right of
recovery in all ordinary cases and leaves nothing to be tried
by jury and is, therefore, not violative of the seventh amend-
ment of the Constitution of the United States.   (Mountain
Timber Company v. Washington, 243 U. S. 235.)   The Act
is sustainable as a valid exercise of the police power of the
state, irrespective of the constitutional amendment.   (Moun-
tain Timber Company v. Washington, supra.)   The inher-
ent power of police carries with it a wide range of judgment
and discretion in matters of regulation and administration.
(Lawton v. Steel, 152 U. S. 133.)   Neither the fourteenth
amendment, nor any other amendment was designed to in-
terfere with the power of the state to prescribe regulations
to protect the health, peace, morals and general welfare of
the people.   (Barbier v. Connolly, 113 U. S. 227.)   The
operation and effect of the Wyoming law as well as the
Washington law is to secure to the employee and his de-
pendents equal and reasonable compensation for injuries
without regard to fault, provided such injury is not caused
by the culpable negligence of the employed.   The common
law defenses known as contributory negligence, fellow ser-
vant rule and assumption of risk are subject to legislative
action.   No person has a vested interest in any rule of law
entitling him to insist that it shall remain unchanged for his
benefit.   (Mum v. Illinois, 94 U. S. 113; Hurtado v. Cal-
ifornia, 110 U. S. 516;  Martin v. Pittsburg & Lake Erie
Ry. Co., 203 U. S. 284;  Chicago & Alton R. R. Co. v. Tran-
barger, 238 U. S. 67;  New York Central R. R. Co. v. White,
243 U. S. 219.)   That the object and purpose of the law is
clearly within the police power of the state is supported by
the Supreme Courts of New York, Washington and of the
United States.   (New York Central R. R. Co. v. White,
216 N. Y. 653;  State v. Clausen, 65 Wash. 165;  Mountain
Timber Co. v. Washington, 75 Wash. 581, 243 U. S. 188,
243 U. S. 219.)   Section 16 of the Act provides exemptions

from contributions to the accident fund on the part of
employers whenever their contributions equal a percentage
of their current monthly pay roll, less amounts deducted
therefrom in payments for injuries occurring among their
employees and in no case less than $5,000.00, thus protect-
ing the fund by a safe margin and prescribing a fair in-
ducement for the exercise of care on the part of the em-
ployer.  The practical operation of the law is that each in-
dividual employer pays into the fund to protect his own
individual employees.  The Act is not in violation of the
fourteenth amendment in depriving an employer of his
property without due process of law.  (Mountain Timber
Company v. Washington, supra.)  While the Washington
law classifies employers into groups and makes all members
of each group responsible for the injury received by the
men in that group, the Wyoming law makes each individual
employer responsible for the injury caused to his employees.
While no part of the fund is refunded to an employer, it
should be remembered that he has been protected all the
time he has been in business by paying a maximum sum
equal to one and one-half per cent of his pay roll.  For
the assurance that any deficit in his account will be met by
the state, in case of accident to his employees, the employer
is required to leave all moneys once paid by him in accord-
ance with the terms of the law, in the fund, to enable the
state to take care of other deficits.  No employer is re-
quired under this Act to contribute to injuries occurring to
any employee, except those in his own service employed in
extra-hazardous work.  Thus, there is removed from this
law the principal question arising under the Washington
Act, yet both the Supreme Court of that state and of the
United States has held the Washington law valid.  Section
3 of the law requires the employee to take under the Act
and deprives him of his common law right to a trial by
jury.  As compensation for surrendering this right, he is
given by Section 19 a definite rate of compensation and by
Section 21 exemption from execution or attachment.  For
the surrender of the right the exercise of which his chances

of recovery depend upon his ability to prove his employer's negligence and his case not subject to the common law defenses and depending upon his financial ability to employ counsel and await the law's delay, he is given a definite sum regardless of negligence and regardless of legal defenses at a time when he most needs assistance. It is not conceded, that the rates of compensation provided are adequate; it is not the intention of the law, however, that the industry shall be compelled to support an injured workman, or his dependents in all the comforts and conveniences of life, nor is such intention to be gleaned from any other compulsory insurance or compensation law. It is not intended that the children of injured workmen shall be supported and given academic and professional courses of instruction without making the personal sacrifices or effort required of the children of those who have not been injured and who aspire to such things. It is the purpose and intent of the law to equalize the burden of accidents occurring in industries, so that a portion is carried by the injured and dependents, a portion by the industries and a portion by the state. It is the purpose and intent of the law to compensate the injured for loss of time and protect him while unable to work, likewise to aid in supporting the children of workmen through the grammar course of our schools to an age in life when they are capable of taking care of themselves. While the employees in these extra-hazardous employments recognize that the rates do not fully meet these expectations, the compensation is so much greater, so much more equalized and the relief so much more satisfactory, than the old system, that they would not voluntarily return to the common law rule. The Legislature can be trusted to properly regulate the rates as time and statistics demonstrate the ability of the industries of the state to carry the increased burden. No industrial insurance act, or compensation law, is better calculated to protect the employee or grant more assurance that his compensation will be received by him, than the Act in question. Without enumerating the remaining paragraphs, it seems fair to say that every restric-

tion placed upon the employee is necessary to prevent fraud; that every privilege granted the employer is to protect the fund from the unscrupulous; that the employer is given no privilege not accorded to the employee; that the limitations and restrictions on both parties are designed to and do without undue hardship on either the employer or the employee facilitate the effective operation of the law.

Blydenburgh, Justice.

The plaintiff in error was plaintiff in the court below and brought this action to recover damages from the defendant in error for injuries alleged to have been sustained while in the service of the defendant in its mines at Rock Springs, Wyoming, due to the negligence of the defendant company. The defendant filed an answer alleging that its mine and the employment of the plaintiff therein were within the amendment to Section 4 of Art. 10 of the Constitution of the State of Wyoming adopted at the election in November, 1914, providing for enactment by the Legislature of what is generally known as a "Workmen's Compensation Law," and the Act passed in pursuance thereof, to-wit: Chapter 124 of the Session Laws of 1915, and the amendments thereto contained in Chapter 69, Session Laws of 1917, setting out said constitutional amendment and said Act as amended, in full in said answer, and also alleging that the employment of plaintiff was one of those designated as extra-hazardous by said constitutional amendment and said statute, and that the defendant had complied with the law and contributed to the "Industrial Accident Fund" provided for by the statute and that therefore the plaintiff's right to compensation from said fund had superseded and excluded any and all rights of action the plaintiff would or might otherwise have had against the defendant. To this answer the plaintiff filed a general demurrer that the answer did not state facts sufficient to constitute a defense to plaintiff's petition, which demurrer was overruled by the court and thereupon the plaintiff refusing to plead further, but standing upon his demurrer, judgment was rendered in favor of

the defendant and for its costs, and the case is brought here alleging error in overruling the demurrer to the answer and in the findings and judgment as contrary to law.

The sole question presented to this court is the constitutionality or unconstitutionality of the Wyoming Workmen's Compensation Statute.

The Act in question was passed by the Legislature in compliance with the amendment to the Constitution of the State of Wyoming submitted to the electors of the state and adopted at the general election held in November, 1914, and added to Section 4, Art. X, of the Constitution. No question is raised as to the legality of the method of submission or the adoption of this amendment and this section of the Constitution as a whole now reads as follows:

"Sec. 4. No law shall be enacted limiting the amount of damages to be recovered for causing the injury or death of any person. Any contract or agreement with any employee waiving any right to recover damages for causing the death or injury of any employee shall be void. As to all extrahazardous employments the Legislature shall provide by law for the accumulation and maintenance of a fund or funds out of which shall be paid compensation as may be fixed by law according to proper classifications to each person injured in such employment or to the dependent families of such as die as the result of such injuries, except in case of injuries due solely to the culpable negligence of the injured employee. Such fund or funds shall be accumulated, paid into the state treasury and maintained in such manner as may be provided by law. The right of each employee to compensation from such fund shall be in lieu of and shall take the place of any and all rights of action against any employer contributing as required by law to such fund in favor of any person or persons by reason of any such injuries or death."

The Act contains the following language, in Section 2: "The right of each employee to compensation from such funds shall be in lieu of and shall take the place of any and all rights of action against any employer contributing, as

required by law to such fund in favor of any such person or persons by reason of any such injury or death. Sections 3526, 4291 and 4292 and all other laws or parts of laws relating to damages for injuries or death from injuries or in any wise in conflict with this Act are hereby repealed, as to the employments, employers and employees coming within the terms of this Act." And Section 3 is:

"Sec. 3. The rights and remedies provided in this Act for an employee on account of an injury shall be exclusive of all other rights and remedies of such employee, his personal or legal representatives or dependent family at common law or otherwise on account of such injury; and the terms, conditions and provisions of this Act for the payment of compensation and the amount thereof for injuries sustained or death resulting from such injuries shall be exclusive, compulsory and obligatory upon both employers and employees coming within the provisions hereof."

The answer in this case, if the Act is not in violation of either the Federal or State Constitutions, is a complete defense to the alleged cause of action contained in the petition, both the constitutional amendment and the Act declaring the rights and remedies under the Workmen's Compensation System to be in lieu of all rights of action against a contributing employer.

This matter is one of great importance to the people of this state, a large proportion of the working population and of the employers of labor coming under the provisions of the Act and the "Industrial Accident Fund" or insurance fund in the state treasury at the close of business June 30, 1918, amounting to more than $536,000. The laborers now having become accustomed to the methods of procedure under this new system and the machinery of the courts thereunder now working smoothly and uniformly it would be a great disturbance of conditions and result in endless confusion to declare this statute invalid and, therefore, there is greater emphasis to be placed on the rule heretofore followed by this and other courts, that a statute will never be declared void unless the nullity and invalidity of the Act are placed,

in the judgment of the court, beyond reasonable doubt. (People v. Supervisors, 17 N. Y. 235; 6 R. C. L., p. 99, and cases there cited; Munn v. Illinois, 94 U. S. 113, 123; Cooley Const. Limitations, Chap. 7; Swan v. United States, 3 Wyo. 151, 155; In re. Fourth Judicial Dist., 4 Wyo. 133, 140; State ex rel. Campbell, et al., v. Stewart, Governor, et al., 171 Pac. 755, 759; State ex rel. Sedillo v. Sargent, 171 Pac. 790, 791.)

It is incumbent upon courts in declaring an act unconstitutional to point out the specific provision of the Constitution or the propositions necessarily implied which are violated by the statute stricken down as invalid. (6 R. C. L. 105.) And thus it becomes incumbent upon counsel in arguing that an enactment of the Legislature is unconstitutional to point out wherein it violates the Constitution and what provisions of the Constitution are violated by the act or to which it is repugnant. (12 C. J. 785, and cases cited.) Counsel for plaintiff in this case have not favored us with any original brief, but have deemed it sufficient to copy and submit, first the brief of plaintiff in error in the case of Mountain Timber Company v. State of Washington, before the Supreme Court of the United States, decided March 6th, 1917, the opinion and decision of that court appearing in 243 U. S., pages 227-246, and as an appendix thereto a copy of a memorandum opinion delivered by A. W. Agee, judge of the District Court for the Second Judicial District of the State of Utah, in the case of Dan B. Bozo v. Central Coal & Coke Company, defendant, the same defendant as in the case at bar; the petitions being the same in effect in both cases and the answer in the Utah case, after a general denial, being almost identical with the answer in the case at bar, and a demurrer being filed to the defense of the constitutional amendment and Workmen's Compensation Law as in this case, Judge Agee declaring the Act unconstitutional and void. The brief in the Mountain Timber Company case being submitted to the Supreme Court of the United States necessarily relates to the questions in which

it was claimed that the Washington statute was in conflict with the Federal Constitution and of course as offered here, as far as it applies, to the claims that the Wyoming statute violates the Constitution of the United States, and perhaps as it might be considered to apply to those provisions of our State Constitution which are similar to the provisions of the Federal Constitution alleged to prohibit the enactment of the statute.   As to the federal questions involved, they might all be briefly and summarily disposed of by calling attention to the fact that the Supreme Court of the United States, in the case referred to in which the brief submitted was filed, decided against the plaintiff in error on all of the questions presented, which decision is binding on this court and all other courts of the country as to all such questions; but in view of the importance to the people of this state of the questions at issue, we deem it expedient to mention the claims made and the decision of the United States Supreme Court in regard thereto.

It was claimed in the brief in the Mountain Timber Company case, and so is claimed here, that the Act violates three distinct provisions of the Constitution of the United States, viz.:

A. Section 4 of Article 4, providing:  "The United States shall guarantee to every state in this Union a republican form of government."

B. The Seventh Amendment to the United States Constitution, providing:  "In suits at common law where the value in controversy shall exceed twenty dollars the right of trial by jury shall be preserved "

C. Section 1 of the Fourteenth Amendment to the Constitution of the United States, which provides: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the law."

The Supreme Court of the United States, in the Mountain Timber Company case, disposed of the first two constitutional objections stated above as A. and B. as follows:

"Two of the constitutional objections may be disposed of briefly. It is urged that the law violates Section 4 of Article IV of the Constitution of the United States, guaranteeing to every state in the Union a republican form of government. As has been decided repeatedly, the question whether this guaranty has been violated is not a judicial but a political question, committed to Congress and not to the courts. (Luther v. Borden, 7 How. 1, 39, 42; Pacific States Telephone & Telegraph Co. v. Oregon, 223 U. S. 118; Kiernan v. Portland, Oregon, 223 U. S. 151; Marshall v. Dye, 231 U. S. 250, 256; Davis v. Ohio, 241 U. S. 565.) The Seventh Amendment, with its provision for preserving the right of trial by jury, is invoked. It is conceded that this has no reference to proceedings in the state courts (Minneapolis & St. Louis R. R. Co. v. Bombolis, 241 U. S. 211, 217), but it is urged that the question is material for the reason that if the Act be constitutional it must be followed in the federal courts in cases that are within its provisions. So far as private rights of action are preserved, this is no doubt true; but with respect to those we find nothing in the Act that excludes a trial by jury. As between employee and employer, the Act abolishes all right of recovery in ordinary cases, and therefore leaves nothing to be tried by jury."

The questions coming under the other objection C. relative to the Fourteenth Amendment and the deprivation of life, liberty and property without due process of law, are those most seriously urged, not only in the Mountain Timber Company case and in this case, but in other cases attacking the constitutionality of workmen's Compensation Acts, both as against the Federal Constitution and similar provisions of the Constitutions of the various states, and it is particularly urged that the requirement that employers shall be forced to contribute or pay for accidents that were not caused by their own negligence are against these constitutional provisions. Attorneys and courts, in urging this,

seem to be unable to grasp the difference between mere doctrines or rules of law which are under legislative control and subject to legislative change and inherent and fundamental rights which are protected by constitutional provisions. The whole common law doctrine of compensation in damages for negligence with all its attendant rules and doctrines as to fellow-servants, assumption of risks and the like, are but rules of law of growth through decisions of courts from time to time and not inherent or vested rights that cannot be changed or abolished by legislative enactment, unless prohibited by some constitutional provision. As said by Mr. Justice Van Devanter, in Second Employer's Liability Cases, 223 U. S., on page 50: " 'A person has no property, no vested interest, in any rule of the common law. That is only one of the forms of municipal law, and is no more sacred than any other. Rights of property which have been created by the common law cannot be taken away·without due process; but the law itself, as a rule of conduct, may be changed at will * * .* * of the Legislature, unless prevented by constitutional limitations. Indeed, the great office of statutes is to remedy defects in the common law as they are developed, and to adapt it to the changes of time and circumstances.' (Munn v. Illinois, 94 U. S. 113, 134; Martin v. Pittsburg & Lake Erie R. R. Co., 203 U. S. 284, 294; The Lottawanna, 21 Wall. 558, 577; Western Union Telegraph Co. v. Commercial Milling Co., 218 U. S. 406, 417." In the case of New York Cent. R. R. Co. v. White, 243 U. S. 188, at page 198, it was said: "No person has a vested interest in any rule of law entitling him to insist that it shall remain unchanged for his benefit. (Munn v. Illinois, 94 U. S. 113, 134; Hurtado v. California, 110 U. S. 516, 532; Martin v. Pittsburg & Lake Erie R. R. Co., 203 U. S. 284, 294; Second Employers' Liability Cases, 223 U. S. 1, 50; Chicago & Alton R. R. Co. v. Tranbarger, 238 U. S. 67, 76.)" Also in Opinion of Justices, 209 Mass. 607, 96 N. E. 308, L. R. A. 1916A, p. 413: "The rules of law relating to contributory negligence and assumption of the risk and the effect of negligence by a fellow servant were

established by the courts, not by the Constitution, and the Legislature may change them or do away with them altogether as defenses (as it has to some extent in the Employers' Liability Act), as in its wisdom, in the exercise of powers intrusted to it by the Constitution, it deems will be best for the 'good and welfare of this commonwealth'." And the Supreme Court of the United States in the Mountain Timber Company case, on page 236 of 243 U. S. says: "The common-law rule confining the employer's liability to cases of negligence on his part or on the part of others for whose conduct he is made answerable, the immunity from responsibility to an employee for the negligence of a fellow employee, and the defenses of contributory negligence and assumed risk, are rules of law that are not beyond alteration by legislation in the public interest; that the employer has no vested interest in them nor any constitutional right to insist that they shall remain unchanged for his benefit; and that the states are not prevented by the Fourteenth Amendment, while relieving employers from liability for damages measured by common-law standards and payable in cases where they or others for whose conduct they are answerable are found to be at fault, from requiring them to contribute reasonable amounts and according to a reasonable and definite scale by way of compensation for the loss of earning power arising from accidental injuries to their employees, irrespective of the question of negligence, instead of leaving the entire loss to rest where it may chance to fall, that is, upon particular injured employees and their dependents."

The right to pass Workmen's Compensation Acts, even without the aid of constitutional amendments, is generally upheld under the police power of the state and thereunder to regulate any industry that in its operation effects any considerable number of the people of the state or that is a matter of public concern as distinguished from mere private interest. In the Mountain Timber Company case the court, in dealing with this part of the discussion, says:

"Whether this legislation be regarded as a mere exercise
of the power of regulation, or as a combination of regula-
tion and taxation, the crucial inquiry under the Fourteenth
Amendment is whether it clearly appears to be not a fair
and reasonable exertion of governmental power, but so ex-
travagant or arbitrary as to constitute an abuse of power.
All reasonable presumptions are in favor of its validity,
and the burden of proof and argument is upon those who
seek to overthrow it.  (Erie R. R. Co. v. Williams, 233 U.
S. 685, 699.)   In the present case it will be proper to con-
sider:  (1) Whether the main object of the legislation is,
or reasonably may be deemed to be, of general and public
moment, rather than of private and particular interest, so
as to furnish a just occasion for such interference with per-
sonal liberty and the right of acquiring property as neces-
sarily must result from carrying it into effect.  (2) Wheth-
er the charges imposed upon employers are reasonable in
amount, or, on the other hand, so burdensome as to be man-
ifestly oppressive.  And (3) whether the burden is fairly
distributed, having regard to the causes that give rise to the
need for the legislation."

"As to the first point:  The authority of the states to en-
act such laws as reasonably are deemed to be necessary to
promote the health, safety and general welfare of their peo-
ple, carries with it a wide range of judgment and discretion
as to what matters are of sufficiently general importance to
be subjected to state regulation and administration.  (Law-
ton v. Steele, 152 U. S. 133, 136.)   'The police power of a
state is as broad and plenary as its taxing power.'  (Kidd v.
Pearson, 128 U. S. 1, 26.)   In Barbier v. Connolly, 113 U.
S. 27, 31, the court, by Mr. Justice Field, said:  'Neither
the (fourteenth) amendment—broad and comprehensive as
it is—nor any other amendment, was designed to interfere
with the power of the state, sometimes termed its police
power, to prescribe regulations to promote the health, peace,
morals, education and good order of the people, and to leg-
islate so as to increase the industries of the state, develop
its resources, and add to its wealth and prosperity.  From

the very necessities of society, legislation of a special character, having these objects in view, must often be had in certain districts, such as for draining marshes and irrigating arid plains. Special burdens are often necessary for general benefits—for supplying water, preventing fires, lighting districts, cleaning streets, opening parks, and many other objects. Regulations for these purposes may press with more or less weight upon one than upon another, but they are designed, not to impose unequal or unnecessary restrictions upon any one, but to promote, with as little individual inconvenience as possible, the general good. Though, in many respects, necessarily special in their character, they do not furnish just ground of complaint if they operate alike upon all persons and property under the same circumstances and conditions. Class legislation, discriminating against some and favoring others, is prohibited, but legislation which, in carrying out a public purpose, is limited in its application, if within the sphere of its operation it affects alike all persons similarly situated, is not within the amendment.' It seems to us that the consideration to which we have adverted in New York Central R. R. Co. v. White, supra, as showing the Workmen's Compensation Law of New York is not to be deemed arbitrary and unreasonable from the standpoint of natural justice, are sufficient to support the State of Washington in concluding that the matter of compensation for accidental injuries with resulting loss of life or earning capacity of men employed in hazardous occupations is of sufficient public moment to justify making the entire matter of compensation a public concern, to be administered through state agencies. Certainly the operation of industrial establishments that in the ordinary course of things frequently and inevitably produce disabling or mortal injuries to the human beings employed is not a matter of wholly private concern."

The contention that the provisions of the Act may be deemed arbitrary or unreasonable is, after discussion, summed up in the following language: "In short, it cannot be deemed arbitrary or unreasonable for the state, instead

of imposing upon the particular employer entire responsibility for losses occurring in his own plant or work, to impose the burden upon the industry through a system of occupation taxes limited to the actual losses occurring in the respective classes of occupation. The idea of special excise taxes for regulation and revenue proportioned to the special injury attributable to the activities taxed is not novel. In Noble State Bank v. Haskell, 219 U. S. 104, this court sustained an Oklahoma statute which levied upon every bank existing under the laws of the state an assessment of a percentage of the bank's average deposits, for the purpose of creating a guaranty fund to make good the losses of depositors in insolvent banks. There, as here, the collection and distribution of the fund were made a matter of public administration, and the fund was created not by general taxation, but by a special imposition in the nature of an occupation tax upon all banks existing under the laws of the state."

This disposes of all claims that the Act violates provisions of the Constitution of the United States and every contention contained in the brief of plaintiff in error in the Mountain Timber Company case.

The rest of the brief filed in this court consists of the memorandum opinion of Judge A. W. Agee in a case in a District Court of the State of Utah, and while such an opinion has no binding effect on the decisions of this court, as it is filed as part of the brief of plaintiff in error, we shall treat it as such and as though it were an original brief filed in this court.

The main contention distinctly stated in the first part of this opinion and running all through it appears to be that in the opinion of the writer thereof the policy of Workmen's Compensation Acts are wrong as the following quotation will show: "In my opinion the whole scheme in this and other compensation acts which provides for a compensation by his employer of an employee who may be injured without any fault or negligence upon the part of the employer, or for compensation to the family of a deceased employee whose death resulted without any fault or negli-

gence whatever upon the part of his employer, and which also takes away from an injured employee the right to maintain an action at law for the recovery of damages against his employer for injuries which he may sustain by reason of the negligence of the employer, and without fault on the part of the employee, is fundamentally wrong."

Questions of policy are for the Legislature, not for the courts. "Whether the plan adopted is the most appropriate or best calculated to accomplish those objects are matters with which the court is not concerned and the law should not be held to be invalid unless clearly in violation of some provisions of the Constitution." (State v. Creamer, 85 O. St. 349, 391, 97 N. E. 602, 39 L. R. A. N. S. 694.) And in Hawkins v. Bleakley, 220 Fed. 378, on page 382, it is said: "Nearly all of the objections to this statute are argued from the standpoint of morals and propriety and policy. As of course those were questions for the Legislature. This statute may have, and no doubt does have, many objectionable features; but that it is a statute with right tendencies I have no doubt. And all such legislation is a matter of growth and development, and in the end when mature, as it ought to be and quite likely will be, beneficial results will be obtained. At all events, this legislation cannot bring forth worse results than we now have as to these matters by court procedure. And still further, and in no event, can courts condemn the mere policy or proprieties of the law. I find no constitutional objections to this measure." And in the case of Lommen v. Minneapolis Gaslight Co. (Minn.), found in 33 L. R. A. 437: "The court has no right to declare an act invalid solely on the ground of unjust and oppressive provisions, because it is supposed to violate the natural, social or political rights of the citizen, unless it can be shown that such injustice is prohibited or such rights guaranteed or protected by the Constitution. Except where the Constitution has imposed limits upon the legislative power, it must be considered as practically absolute. The courts are not the guardians of the rights of the people, except as these rights are secured by some constitutional provision which

comes within the judicial cognizance. The protection against, and remedy for, unwise or oppressive legislation, within constitutional bounds, is by appeal to the justice and patriotism of the people themselves, or their legislative representatives. Neither are courts at liberty to declare an act void merely because, in their judgment, it is opposed to the spirit of the Constitution. They must be able to point out the specific provision of the Constitution, either expressed or clearly implied from what is expressed, which the act violates." That the courts have very generally held against the personal view of the writer of the opinion is confessed later in the opinion by the following quotation: "I am aware of the fact that compulsory acts have been sustained by the courts of last resort in New York, Washington, Montana and California, and recently the Washington law has been sustained by the Supreme Court of the United States, in the case of Mountain Timber Company v. Washington, 243 U. S. 219." And later that his opinion cannot govern: "What I have said in the first part of this opinion concerning the validity of Compulsory Compensation Acts is, of course, merely an expression of my own opinion upon the fundamental principles underlying the question. The question of the validity of such laws must necessarily be determined by a consideration of the terms of the enactment involved considered in connection with the constitutional provisions of the state."

The matters that are referred to in this opinion have been settled largely by what has been said above in discussing the federal questions urged; but some of them refer to provisions of our State Constitution and require some consideration.

The objection urged that the Act requires an employer "to contribute to a fund which is to be used to compensate not only persons injured while in the employ of others, regardless of whether the employer or the employee was guilty of negligence," has been discussed above and the writer does not seem to grasp the idea that the Legislature is substituting one entirely new system for another that is deemed

to be unwise and not meeting modern conditions; that the
common law rules and doctrines which had sprung up
through decisions of courts under different conditions are
deemed inadequate to meet justly and equitably the circum-
stances of present day employments as is said in the case of
The New York Central R. R. Co. v. White, supra: "The
statute under consideration sets aside one body of rules
only to establish another system in its place. If the em-
ployee is no longer able to recover as much as before in case
of being injured through the employer's negligence, he is
entitled to moderate compensation in all cases of injury, and
has a certain and speedy remedy without the difficulty and
expense of establishing negligence or proving the amount
of the damages. · Instead of assuming the entire conse-
quences of all ordinary risks of the occupation, he assumes
the consequences, in excess of the scheduled compensation,
of risks ordinary and extraordinary. On the other hand, if
the employer is left without defense respecting the question
of fault, he at the same time is assured that the recovery is
limited, and that it goes directly to the relief of the desig-
nated beneficiary. And just as the employee's assumption
of ordinary risks at common law presumably was taken into
account in fixing the rate of wages, so the fixed responsi-
bility of the employer, and the modified assumption of risk
by the employee under the new system, presumably will be
reflected in the wage scale. The Act evidently is intended
as a just settlement of a difficult problem, affecting one of
the most important of social relations, and it is to be judged
in its entirety. We have said enough to demonstrate that,
in such an adjustment, the particular rules of the common
law affecting the subject matter are not placed by the
Fourteenth Amendment beyond the reach of the law mak-
ing power of the state; and thus we are brought to the
question whether the method of compensation that is es-
tablished as a substitute transcends the limits of permis-
sible state action." Also in Ives v. South Buffalo R. Co.,
201 N. Y. 271, 94 N. E. 431, 23 Ann. Cas. 156, on page
165, it is said: "The state has complete control over the

remedies which it offers to suitors in its courts even to the point of making them applicable to rights or equities already in existence. It may change the common law and the statutes so as to create duties and liabilities which never existed before." And on page 166: "The power of the state to make such changes in methods of procedure and in substantive law is clearly recognized."

It is next contended that the provisions of the Act require the contribution of careful employers "to a fund to be used to compensate persons who are injured while in the employ of another, who has used little or no care to avoid such injury, and even though the injured employee has been guilty of negligence." Thus "the careful employer as well as the careful employee are made to suffer for the acts of a negligent employer and negligent employee."

The writer must have overlooked the provisions of Section 16 of the Wyoming Act. When any employer's contribution to the fund "after deducting all payments made on account of injuries to his employees and all allowances made on account of such injuries, shall equal full one and one-half per cent ($1\frac{1}{2}\%$) of his annual pay-roll computed by multiplying his current month's pay-roll of workmen engaged in extra-hazardous employment by twelve, and shall likewise be not less than five thousand ($5,000.00) dollars," he shall not be compelled to contribute to the fund, so there is every inducement to the employer to reduce the chance of accident to his employees. The language of the amendment and of Section 2 of the Act, "except in case of injuries due solely to the culpable negligence of the injured employee," answers the other part of this contention.

It is next claimed that "a person's right to be protected from injury caused by the negligence of his employer is a property right and to take that right from him is a taking of property without due process of law." The courts have held to the contrary, as shown above. And it is generally held that there is no property right as to actions at law for tort unless the same has accrued prior to the passage of the Act changing the rules of law. In Middleton v. Texas

Power Co. (Tex.), 185 S. W. 556, 560, it is said: "A vested right of action given by the principles of the common law is a property right, and is protected by the Constitution as is other property. The Act, however, does not profess to deal with rights of action accruing before its passage. That which is withdrawn from the employee is merely his right of action against the employer, as determined by the rules of the common law, in the event of his future injury. This is nothing more or less than a denial to him by the Legislature of certain rules of the common law for the future determination of the employer's liability to him for personal injuries incurred in the latter's service, **and, in the** plan of compensation provided, the substitution by the Legislature of another law governing such liability and providing a different remedy." And again: "The injuries, or wrongs, with which it deals are accidental injuries or wrongs. What we know and denominate as the cause of action arising from an accidental injury is purely the creation of the common law. It is a common law liability founded upon the common law doctrine of negligence; and but for the rule of the common law—sometimes also expressed in statutes—there would be no liability for such an injury, and hence no cause of action for it."

It is next claimed that while the constitutional amendment provides that each person injured "shall be paid compensation as may be fixed by law according to proper classifications," there is no classification as to employment except as to employers by whom three or more workmen are employed and in this respect the Act differs from the Washington Act.

The very language of the amendment shows that this is a matter to be left to the Legislature "under *proper* classification." Who but the Legislature is to decide what is "proper"? In the case of Ives v. South Buffalo R. Co., supra, where the Compensation Law prior to the adoption of the amendment to the Constitution of the State of New York was held unconstitutional as taking property without due process of law, on the question of classification which was

also raised, the New York Court of Appeals, page 162, 23
Ann. Cas., said: "Classification for purposes of taxation
or of regulation under the police power, is a legislative func-
tion with which the courts have no right to interfere unless
it is so clearly arbitrary or unreasonable as to invade some
constitutional right. A state may classify persons and ob-
jects for the purpose of legislation provided the classifica-
tion is based on proper and justifiable distinctions (St. John
v. New York, 201 U. S. 633, 5 Ann. Cas. 909, 26 S. Ct. 554,
50 U. S. (L. Ed.) 107; Minneapolis &c. R. Co. v. Herrick,
127 U. S. 210, 8 S. Ct. 1176, 32 U. S. (L. Ed.) 109; Chi-
cago &c. R. Co. v. Pontius, 157 U. S. 209, 15 S. Ct. 585, 39
U. S. (L. Ed.) 675), and for a purpose within the legisla-
tive power. There can be no doubt, we think, that all of the
occupations enumerated in the statute are more or less in-
herently dangerous to a degree which justifies such legisla-
tive regulation as is properly within the scope of the police
power." And in Hunter v. Colfax Cons. Coal Co. (Iowa),
154 N. W. 1037, 1053, it is said: "The power to classify is
primarily in the Legislature, that the courts accord it the
widest latitude in performing this function, and that a class-
ification adopted by it will be sustained unless it is so pal-
pably arbitrary as that there is no room for doubt that dis-
cretion has been abused by indulging in an unjustifiable dis-
crimination." Also in State v. Clausen, 65 Wash. 156, 117
Pac. 1101, 37 L. R. A. N. S. 466, on page 1114 of 117 Pac.:
"It is well settled that neither the clause of the State Con-
stitution prohibiting class legislation, nor the clause of the
Fourteenth Amendment to the Constitution of the United
States relating to the equal protection of the laws, takes
from the state the power to classify in the adoption of po-
lice regulations. The limitations imposed admit of a wide
discretion in this respect, and avoid only what is done with-
out any reasonable basis; that is, such regulations as are in
their nature arbitrary." And the compensation acts have
universally been held good as against almost every kind of
attack on the matter of arbitrary or unreasonable classifica-
tion. (Porter v. Hopkins (Ohio), 109 N. E. 629; Jeffrey

Mfg. Co. v. Blagg, 235 U. S. 571, 59 L. Ed. 364, affirming 90 Ohio St. 376, 108 N. E. 465; State ex rel. Saple v. Creamer, 85 Ohio St. 349, 39 L. R. A. N. S. 694, 97 N. E. 602; Shade v. Ash Grove Lime & Portland Cement Co., 93 Kan. 257, 144 Pac. 249; Borgins v. Falk Co., 147 Wis. 327, 37 L. R. A. N. S. 489, 133 N. W. 209; Deibeikis v. Link Belt Co., 261 Ill. 454, 104 N. E. 211, Ann. Cas. 1915A, 241; Cunningham v. Northwestern Improv. Co., 44 Mont. 180, 119 Pac. 554; Western Indemnity Co. v. Rallsburg (Cal.), 151 Pac. 398; Re. Opinion of Justices, 209 Mass. 607, 96 N. E. 308; Mackin v. Delivit Limkin Axle Co. (Mich.), 153 N. W. 49; Mathison v. Minneapolis Street R. Co., 126 Minn. 286, 148 N. W. 71.)

It is claimed that the provision of Subdivision (c) of Section 19 of the Act that no compensation shall be allowed for the first ten days of disability unless the incapacity extends beyond a period of thirty days violates that part of the constitutional amendment plead "which declares that the Legislature shall provide by law for the compensation of each person injured." In the first place the amendment is not as quoted, the mandatory provision being that "The Legislature shall provide by law for the accumulation and maintenance of a fund or funds out of which shall be paid compensation *as may be fixed by law according to proper classification* to each person injured." That it is a proper regulation and classification to fix by law that compensation shall not be paid for such slight or inconsequential injury as shall disable the workman for only ten days or less can hardly be doubted, and is evidently made to protect the fund from those workingmen who might prefer to remain idle and draw compensation when really able to pursue their usual avocations. But should it be thought that the provision quoted required payment to everyone injured from the time of the injury that would not render the act void as a whole. This provision for non-payment for the first ten days might be declared invalid and as it can readily be separated from the rest of the Act the whole of the rest of the Act would stand. (6 R. C. L., page 121, and cases cited;

36 Cyc., p. 976, and cases cited.)   And this proposition
could not be raised either in the case at bar or the case in
the Utah court, but only by one applying for compensation
under the Act who had been refused compensation for the
first ten days.

It is objected that Section 12 of the Act seems to deny the
right of the employee to be represented by counsel, except
the county attorney or some other attorney appointed by
the court.   Later in the opinion the writer thereof refers
to Section 25 of the Act and its provision that fees of at-
torneys of beneficiaries under the Act are fixed at not more
than $50 as grossly inadequate.   This later provision shows
that Section 12 could have no such interpretation as sug-
gested.   The writer goes on to say, however, that the pro-
vision for the free services of the county attorney or some
other attorney appointed by the court was intended "to give
the Act an appearance of fairness which it does not con-
tain," "but in view of the fact that it is well known that in
the industrial centers of Wyoming the election of public
officers are dictated by the employers it appears a travesty
on justice"; and in the later reference, this "might appear
quite generous to one who does not know that in the indus-
trial centers of Wyoming, where many of the employees
are aliens and not entitled to vote, the employers dictate the
election of the officers."

This is a queer statement for one who in his opinion says
he cannot take judicial knowledge of the Constitution of
Wyoming, and therefore assumes to construe the validity
of a Wyoming Act in accord with the provisions of the Con-
stitution of the State of Utah.   By what system of reason-
ing could he take judicial knowledge of such alleged condi-
tion which is neither contained in the pleadings and no evi-
dence thereof being before the court?   Whatever might have
been the opinion in regard thereto in Wyoming during the
territorial and early statehood days, there is no such opinion
and belief generally extant among the people of this state,
and we are satisfied that no such conditions as stated in fact
exist, whatever may be the opinion in Utah.   These pro-

visions were incorporated in the Act to prevent attorneys from appropriating a large portion of the amounts that would be paid to those injured out of the fund and are parallel to the limitations imposed by the United States Government on attorneys securing pensions for Civil War veterans and in view of the fact that the services that could be rendered under the Act are confined to filling blanks provided by the state treasurer and in case of contest to trying the one question of the sole culpable negligence of the injured employee are amply sufficient whenever the employee is not satisfied with the public official or counsel appointed by the court.

One of the evils that had sprung up under the old system was the activities of that class of attorneys despised and detested alike by both employees and employers embraced in the appellation "Ambulance Chasers," and one of the remedies sought in the new system was to curb or do away with the activities of this class. The Act would not have fulfilled its full purpose without some such provision as is here objected to.

It is next objected that the amounts to be paid according to the scale or schedule fixed by the Act are unreasonably low. The objectors on this ground do not grasp the scope or province of the new system. It is not intended to give compensation as damages, but is more in the nature of accident insurance. Accident insurance companies pay a certain fixed compensation per week on account of a certain premium paid and a certain sum in accord with a fixed schedule for loss of leg, arm, etc., or upon accidental death, and there is no question of the amount in accordance with expectancy of life or prospective earning power. In adopting the new system both employees and employers gave up something that they each might gain something else and it was in the nature of a compromise, as was said in Stertz v. Indus. Insur. Comm., 158 Pac. 256, 258: "Our Act came of a great compromise between employers and employed. Both had suffered under the old system; the employers by heavy judgments of which half was opposing lawyers'

booty, the workmen through the old defenses or exhaustion in wasteful litigation. Both wanted peace. The master, in exchange for limited liability, was willing to pay on some claims in future, where in the past there had been no liability at all. The servant was willing, not only to give up trial by jury, but to accept far less than he had often won in court; provided he was sure to get the small sum without having to fight for it. All agreed that the blood of the workman was the cost of production, that the industry should bear the charge. By the working class, the new legislation was craved from a horror of lawyers and judicial trials. What they wanted, as this Act expressly recites in its first section, was compensation, not only safe, but sure. To win only after litigation, to collect only after the employment of lawyers, to receive the sum only after months or years of delay, was to the comparatively indigent claimant little better than to get nothing. The workmen wanted a system entirely new. It is but fair to admit that they had become impatient with the courts of law. They knew, and both economists and progressive jurists were pointing out, what is now generally conceded, that two generations ought never to have suffered from the baleful judgments of Abinger and Shaw." And in referring to the Washington statute as an Insurance Act, on page 259 it was said: "Ours is not an Employers' Liability Act. It is not even an ordinary Compensation Act. It is an industrial insurance statute. * * *. * All the features of an Insurance Act are present. Not only are all remedies between master and servant abolished, and, in the words of the statute, all phases of them withdrawn from private controversy, but the employee is no longer to look to the master even for the scheduled and mandatory compensation. He must look only to a fund fed by various employers. When the employer, for his part, pays his share into this fund, all obligation on his part to anybody is ended."

In the Mountain Timber Co. case, supra, the Supreme Court of the United States, speaking of the insurance feature of the Washington Act, says: "The Act in effect puts

these hazardous occupations in the category of dangerous agencies, and requires that the losses shall be reckoned as a part of the cost of the industry, just like the pay-roll, the repair account, or any other item of cost. The plan of assessment insurance is closely followed, and none more just has been suggested as a means of distributing the risk and burden of losses that inevitably must occur, in spite of any care that may be taken to prevent them."

Judge McPherson, in Hawkins v. Bleakley, supra, as to the scale, said: "A scale of compensation is fixed and made certain. * * * * Many of the states for many years have had statutes fixing the liability with precision in cases of death, and in no instance has any court held such statute invalid. And why a statute cannot fix with certainty the damages to be allowed in case of the loss of an arm, leg, eye, or other injury, is not perceived, and counsel fail to state any legal or constitutional objection thereto."

The matter of the schedule is one for the Legislature, not for the courts, as said in Ross v. Erickson Construction Co., 89 Wash. 634, 155 Pac. 153, at page 158: "It may be asserted, without doing violence to the rules of logic or of law, that whatever sum is fixed for partial or total disability is theoretically the exact sum necessary to measure and compensate the wrong. The logic of our former decision in State ex rel. Davis-Smith v. Clausen, supra, is that the admeasurement of damages in money for injuries to employees is within the police power of the state, and it is axiomatic that the court will not restrain or enlarge upon the exercise of that power. Nor will it substitute its judgment for that of the Legislature upon any question of fact arising under it. (State v. Somerville, 67 Wash. 648, 122 Pac. 324; State v. Mountain Timber Co., 75 Wash. 581, 135 Pac. 645."

In Jensen v. Southern Pac. Co., 215 N. Y. 514, 109 N. E. 600, L. R. A. 1916A, 403, the case in which the New York Court of Appeals declared the New York Compensation Act constitutional which was passed after the adoption of the constitutional amendment in that state, it is said:

"This Act protects both employer and employee, the former from wasteful suits and extravagant verdicts, the latter from the expense, uncertainties and delays of litigation in all cases, and from the certainty of defeat if unable to establish a case of actionable negligence.   Both Acts are said to have been based on the proposition that the risk of accidental injuries in a hazardous employment should be borne by the business, and that loss should not fall on the injured employee and his dependents, who are unable to bear it or to protect themselves against it.  *  *  *  *  This Act does in fact, as well as in theory, distribute the burden equitably over the industries affected.   It allows compensation only for loss of earning power, but by the creation of a state insurance fund,  *  *  *  *  it insures the prompt receipt by the injured employee or his dependents of a certain sum undiminished by the expense of litigation.  *  *  *  A compulsory scheme of insurance to secure injured workmen in hazardous employments and their dependents from becoming objects of charity certainly promotes the public welfare as directly as does an insurance of bank depositors from loss.  *  *  *  *  To be sure the compensation or recovery is limited, and that in a sense may possibly constitute a taking; but, if so, it is his contribution to an insurance scheme designed for his benefit, and may be justified on precisely the same grounds as the contribution exacted of the employer has been.   When he enters into the contract of employment, he is now assured of a definite compensation for an accidental injury occurring with or without fault imputable to the employer, and is afforded a remedy which is prompt, certain and inexpensive.   In return for those benefits he is required to give up the doubtful privilege of having a jury assess his damages, a considerable part of which, if recovered at all after long delay, must go to pay expenses and lawyers' fees.  *  *  *  *  This subject should be viewed in the light of modern conditions, not those under which the common-law doctrines were developed.   With the change in industrial conditions, an opinion has gradually developed which almost universally favors a more just

and economical system of providing compensation for accidental injuries to employees as a substitute for wasteful and protracted damage suits, usually unjust in their results either to the employer or the employee, and sometimes to both. Surely it is competent for the state, in the promotion of the general welfare, to require both employer and employee to yield something toward the establishment of a principle and plan of compensation for their mutual protection and advantage."

It is further contended that the provision that children over the age of sixteen shall not be considered dependents unless physically or mentally incapacitated from earning, renders the Act unconstitutional. Again, this age is on a parallel with the United States Pension Laws, the age of sixteen being fixed under which pensions to widows of soldiers are increased by reason of dependent children and we quote with approval from the brief of the *amicus Curiae* who appeared at the request and on behalf of the working men in the argument of this case in this court:

"It is not the contention of the workers of the state, nor do they accede to the proposition that the rates of compensation awarded by this law are adequate for the injuries received. It is not the intention of the law, however, no more than that of any other compulsory insurance or compensation law, that the industry shall be compelled to support the injured workmen or his dependents in all the comforts and conveniences of life during their remaining stay upon the earth. It is not the intent that the children of the injured workmen shall be supported and given an academic and professional course of instruction, without being required to make any of the personal sacrifices or put forth any of the personal efforts required of the sons and daughters of workmen who have not been injured, and who aspire to higher education. It is the purpose and intent of the law, however, to equalize the burden of all accidents occurring in the industries, so that a portion is carried by the injured and his dependents, a portion by the industries and a portion by the state. It is the intent and purpose of the law to

grant such compensation as will, to a reasonable extent, compensate the injured for the loss of time and protect him while he is unable to work.   It is the purpose and intent of the law to grant such compensation as will materially aid in supporting the children of the workmen through the grammar course of our schools and to an age in life when they are capable of taking upon themselves the burden of making a livelihood, and carrying on higher studies if they are so inclined.   While the employees in these extra-hazardous employments recognize that the rates of compensation do not fully meet these expectations, the compensation is so much greater, the distribution so much more equalized, and the relief so much more satisfactory than under the old system, that they would not voluntarily return to the common law rule.   The Legislature has established the present rates of compensation, and to that body can be trusted the proper regulation of inadequate rates as time and statistics demonstrate the ability of the industries or of the state to carry the increased burden, and the justness of the employees' cause."

It is further objected that if the family of a deceased employee are non-resident aliens they only receive thirty-three per cent of the amount allowed to residents of the state.   It has been frequently argued and held, where there was no such constitutional provision as ours, that under the police power the right to compensate dependents was a public concern in that they being deprived of their usual support might otherwise become, through poverty, public charges, and this reason did not apply to non-resident aliens, and in the case of Western Metal Supply Co. v. Pillsbury (Cal.), 156 Pac. 491, it was argued the California statute was void because the employer might be required to make payments to such aliens.   But if the words "to each person injured * * * * or the dependent families of such as die," as contained in the amendment to our Constitution, should be construed as requiring full payment to non-resident aliens' families the same as to resident, that would have no application in this case, as all that was said above as to "the non-payment for

the first ten days" provision of the Act would apply equally to this provision.

The proposition that the courts of Utah will not take judicial notice of the Constitution of Wyoming and that the presumption is therefore that the Constitution of Wyoming is the same as that of Utah, and the Wyoming Act is in conflict with certain provisions of Utah's Constitution, deserve no consideration by this court, but the amendment to the Constitution of Wyoming as plead in the answer in both the case here and in the Utah case, was fairly before that court and if such an amendment were adopted in Utah and attached to the Utah Constitution it may well be doubted that the Supreme Court of that state would declare this or a similar act unconstitutional on account of previous provisions of its Constitution, such as the one quoted in the opinion of Judge Agee. The opinion then says that "While the courts of this state (Utah) do not take judicial notice of the Constitution of Wyoming, it is a fact known to lawyers that the Constitution of that state prohibits the Legislature from limiting the amount of recovery in actions for damages for death by wrongful act." This judge who cannot take judicial notice of the Constitution of Wyoming can take notice of a fact "well known to lawyers" in deciding the constitutionality of a Wyoming enactment, but fails to note the additional fact "well known to lawyers" that the amendment plead is an addition to the very provision of the Wyoming Constitution referred to and changes and modifies it as to a Workmen's Compensation Act. The closing part of the opinion again merely expresses the writer's individual opinion as to the policy and effect of this Workmen's Compensation Act, and says: "It is the most vicious and arbitrary piece of legislation to which my attention has ever been called and, instead of being called a Workmen's Compensation Law it ought to have been called a law to rob injured employees and the widows and children of deceased employees." While courts are not to pass on the effect or policy of an act, so long as it is not in conflict with constitutional provisions, such an expression

of opinion can only be based on ignorance of the facts and conditions as they exist in this state.

It is well and generally known in this state that this constitutional amendment was adopted after an active and strenuous campaign by and on behalf of the workmen of the state and their organizations, and that the largest votes on the proposition and the largest majorities for the amendment were in the industrial centers and the localities where the greatest numbers of working men are employed. The Act under consideration was drafted jointly after long and careful consideration by representatives of both the employers of labor and organizations of labor of the state. And it was through their joint and concurrent efforts that this Act was adopted by the Legislature. The need for a change from the old unsatisfactory system was felt by all and the amendment was proposed and adopted to not only permit but compel the Legislature to adopt the new system more equitable and more in accord with the enlightened policy brought about by modern conditions surrounding the employment of labor in hazardous employments. The system covered by Workmen's Compensation Acts or Industrial Insurance Acts had been adopted in various forms by different states, and the courts had passed on the various phases of such acts, and these matters were before the framers of the amendment, the Legislature which submitted it to the people, and the electors of the state at the time of its adoption; and the intent or object was, as said in Western Metal Supply Co. v. Pillsbury, supra, at page 494: "The constitutional amendment, as is perfectly apparent from its terms, was designed to establish the authority of the Legislature to pass laws making the relation of employer and employee subject to a system of rights and liabilities different from those prevailing at common law. That system was one which had already been adopted in many jurisdictions. The statutes putting it into force were commonly known as Workmen's Compensation Laws. In every one of those laws, provision was made not only for compensation or indemnity to an employee who survived his

injury, but for payment to the heirs or dependents of an employee who had received a fatal injury. (2 Boyd, Workmen's Comp., Sec. 213.) The two kinds of payment have always been regarded as component parts of a single scheme of rights and liabilities arising out of a given relation. (See Huyett v. Pa. R. Co., 86 N. J. Law, 683, 92 Atl. 58.) It is true that at common law there was no action for torts causing death. The right of action died with the injured person. Accordingly, it is universally held that statutes like Section 377 of the Code of Civil Procedure, giving an action for wrongful act or neglect causing death, create a right entirely distinct from that which was vested in the injured person before his death. But the analogies of the common law cannot be applied too closely to this new scheme, which undertakes to supersede the common law altogether and to create a different standard of rights and obligations, covering the entire field of injury to workmen in the course of their employment. That the constitutional amendment was designed to authorize the establishment of the new system. cannot be doubted." And also in the concurring opinion of Chief Justice Angellotti, "The paramount idea was to free the legislative department from the effect of certain constitutional provisions which might reasonably be contended to preclude the desired action, and to leave that department with full power to deal with the particular subject matter, regardless of such constitutional provisions."

The general principles governing the construction of statutes apply to the construction of constitutions. (12 C. J. 699.) And the fundamental purpose in such construction is to ascertain the intent of the framers and the people who adopted it, and give effect thereto. (12 C. J. 700.) And an amendment will prevail over a provision of the original Constitution inconsistent with the amendment. (12 C. J. 709.) The amendment being the latest expression of the will of the people, cannot be limited or controlled by previous existing provisions of the Constitution. In construing the amendment the court should keep in view the Constitution as it was before it was amended, the evil to be

remedied and the terms of the amendment. (Ferrell v. Keel, 105 Ark. 380, 151 S. W. 269.) "The safe way is to read its language in connection with the known condition of affairs out of which the occasion for its adoption may have arisen, and then to construe it, if there be therein any doubtful expressions, in a way so far as is reasonably possible, to forward the known purpose or object for which the amendment was adopted. This rule could not, of course, be so used as to limit the force and effect of an amendment in a manner which the plain and unambiguous language used therein would not justify or permit." (Maxwell v. Dow, 176 U. S. 581, 602, 20 S. Ct. 448, 494, 44 L. Ed. 597.

The Act in question, in all its general provisions, is in accord with the system of Workmen's Compensation Acts that were in the minds of the people adopting the constitutional amendment, and, as said in Jensen v. Southern Pac. Co., supra, "It is plainly justified by the amendment to our own State Constitution, and the decisions of the United States Supreme Court." And any and all provisions of the Constitution that might have been construed as preventing the Legislature from passing such an Act are modified or repealed as far as they would effect such an Act. That both the employers and employees of the state are better satisfied with the new system than the old is to be seen from the fact that in this case the attorneys for the employers of the largest number of workmen of any employer contributing to the industrial accident fund, and also an attorney employed and appearing on behalf of the workmen and organized labor of the state appeared, both arguing in favor of the constitutionality of the Act and for its validity. Both employers and employees and the people of the state generally being satisfied with the operation and administration of this Act, they would be very loath to return to the old system.

Questions of detail, and especially matters in regard to the amount of compensation to be given to injured employees in accordance with the schedules fixed by the Act

are for the Legislature in its wisdom, and that the Legislature can be trusted to so modify and change these schedules in accordance as the operation of the Act from time to time and the circumstances and conditions of the working men and of employers may warrant and deem wise, is seen from the fact that at the first Legislature after taking effect of the Act, the fund having increased, the compensation in various instances was increased and the rate or percentage to be paid to the fund by employers was lowered. No doubt workmen feel under the increased cost of living that the compensations provided by the Act at present are somewhat inadequate, but it will be the province of the next Legislature, in view of the experience of the workings of the Act and the fact that the fund has grown so that it is evident it will be safe to increase compensations, and the general knowledge that living conditions have increased owing to the war, to increase materially, in many instances, the compensation provided by the schedule. The workmen, employers and people of the state generally can leave this matter to be adjusted in accordance with the wisdom of the Legislature, where it belongs.

We hold that the Act passed and considered is justified in all respects by the amendment to the Constitution providing therefor, and that it is not in conflict with any provision of either the Constitution of the United States or the Constitution of this state. The court below, in overruling the demurrer to the answer, committed no error, and the judgment and decision of the court below will, therefore, be in all matters affirmed.                                        *Affirmed.*

POTTER, C. J., and BEARD, J., concur.