HAWKINS v. BLEAKLEY, State Auditor, et al.

(District Court, S. D. Iowa, Central Division. June 22, 1914.)

No. 12–A.

1. CONSTITUTIONAL LAW ☞43—JURY ☞28—FREEDOM TO CONTRACT—DUE PROCESS OF LAW—WAIVER.
   The constitutional guaranties of liberty of contract, due process of law, and right of trial by jury can be waived, either expressly or by common consent or acquiescence.
   [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 41; Dec. Dig. ☞43; Jury, Cent. Dig. §§ 176–196; Dec. Dig. ☞28.]

2. MASTER AND SERVANT ☞16½, New, vol. 16 Key-No. Series—WORKMEN'S COMPENSATION ACT—CONSTITUTIONALITY.
   Iowa Workmen's Compensation Act (Acts 35th Gen. Assem. c. 147) §§ 1–22, fixing the amount of compensation to be paid by an employer for specific injuries to employés, is constitutional.

3. CONSTITUTIONAL LAW ☞105—VESTED RIGHTS—INJURIES TO SERVANT—DEFENSES.
   The Legislature had power to enact the provisions of that act which deprive an employer who does not elect to come thereunder of the defenses of assumption of risk, contributory negligence, and negligence of fellow servants, since the employer has no vested right in those defenses.
   [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 228–235; Dec. Dig. ☞105.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. MASTER AND SERVANT ⚖️16½, New, vol. 16 Key-No. Series—WORKMEN'S
COMPENSATION ACT—CONSTITUTIONALITY—ARBITRATION.

    The provisions of Iowa Workmen's Compensation Act, §§ 23–41, for arbitration of disputes under the direction of the industrial commissioner, are constitutional.

5. MASTER AND SERVANT ⚖️16½, New, vol. 16 Key-No. Series—WORKMEN'S
COMPENSATION ACT—CONSTITUTIONALITY—INSURANCE.

    The insurance provisions of Iowa Workmen's Compensation Act, §§ 42–51, are constitutional.

In Equity. Bill by J. C. Hawkins against John L. Bleakley, State Auditor, and another, for injunction. Defendants' motion to dismiss the case sustained, and bill dismissed with prejudice.

Ryan & Ryan and J. P. Hewitt, all of Des Moines, Iowa, for complainant.

George Cosson, of Des Moines, Iowa, and John Clarkson, of Albia, Iowa, for respondents.

SMITH McPHERSON, District Judge. This is an action by a bill in equity exhibited by complainant against State Auditor Bleakley and State Industrial Commissioner Garst seeking to enjoin the enforcement of chapter 147 of the Laws of the Thirty-Fifth General Assembly of Iowa (1913) known as the Employer's Liability or Workmen's Compensation Law. The complainant, being an employer of labor and within the terms of the statute, contends that the statute in unconstitutional and void. The defendant moves to dismiss the case, equivalent to a demurrer, on the grounds that the bill is without equity and that the statute is valid. I do not care to prepare a formal opinion, and I make known my views as if orally stated.

All thoughtful persons agree that present conditions call for legislative, judicial, or economical relief, one or all. Enterprises such as railroads, street car lines, interurban lines, manufacturing plants of all kinds, with rapidly moving machinery, usually hazardous, with the dangerous invisible electric current of high voltage, the agency of steam, geared with cogwheels, belts, pulleys, and other appliances, are killing and crippling thousands and thousands of persons every year. This is so even when the employés are sober, attentive, and watchful, and is materially increased when such persons, or some of them, are negligent. This means poverty and distress, and is followed by charities, and too often filling the poorhouses and sanitariums. The man with an eye gone, a leg or arm off, or otherwise physically or mentally impaired, has but a limited or no chance in life. This burden sometimes falls upon the injured person alone, sometimes on the wife, children, or parents, and often on the general public by increased taxation. Presidents, Congressmen, legislators, and men of eminence for years have been urging actual reforms in these matters, and the employés have been insisting upon relief. All persons know these things to be so, and the literature and debates for years have been devoted to the query as to the solution and remedy. The courts have not been lagging so much as retrograding in dealing with the subject. The time of the courts is consumed in listening to the harrowing stories, sometimes of

truth and sometimes of perjury. Claim agents are busy from the hours of death or injury in locating and preserving the testimony that the corporation may be protected. The friends and lawyers and agents of the dead and injured are equally industrious. We often see advertisements in the press of "witnesses wanted to the occurrence." We have new words in the dictionary, but the new words "snitches" and "ambulance chasers" are of the simple and well-known language. Verdicts must be for twice the fair amount to be awarded as damages, so as to allow the "contingent fee" or the injured man, his widow, or children, must accept half the sum justly due. And these results are only obtained after years of litigation. Sickness, unavoidably out of town, urgent business in other courts, prolong the litigation. . When judgment is at last obtained in favor of the one side or the other, appeals, certiorari, mandamus, and writs of error, one or all, are sought, and then sometimes reversals, and then other delays. Sometimes verdicts are returned, and later on it is ascertained that the testimony was to meet the law of the case. Sometimes the verdicts are returned for only part of the sum that should have been awarded, and sometimes the verdict is followed by getting well so speedily as to be termed almost miraculous. So that, regardless upon which side the greater wrongs occur, a question no one can decide, all ought to concede that which is the truth, that the best the courts can do in many cases is frailty itself. Something like 30 per cent. of the time of the courts is taken with these cases, adding enormously to the expense of the taxpayers. So that if there is to be a remedy for these evils, and that remedy is limited to the courts, reforms more than paper reforms must be brought about. And such real reforms are well-nigh hopeless, if the past 30 years of judicial history is to be a criterion.

To meet the burdens created by death and injury thus brought about, by public taxation, is to argue the question by idle talk. The people are now groaning under taxation.

Damages not easily avoided must go into the cost of production and be borne by the consumers, and those readily avoided in some instances at least should be borne by him or it responsible therefor. But that aids but little because the question as to who is responsible is often a complicated and difficult question and one not easily solved, and often solved by well-nigh a guess.

[1] Nearly every foreign country has attempted to solve it by legislation, and 20 or more of the United States within a few years have enacted statutes for the purpose of affording a remedy. Some of these statutes have been overthrown by the courts, and some have been sustained as valid legislation. The objections usually urged are those against impinging upon the liberty of contract, denying due process of law, and denying the right of trial by jury. The clause in our state Constitution providing that the right of trial by jury shall remain inviolate presents a serious and important question. It is likewise an humorous objection, because a trial by jury is seldom asked or desired by the employer of labor. But waiving the humorous phases, it is both important and necessary to at least briefly consider the constitutional objections. But in doing this I shall not review the great decisions on constitutional law, but will be content by analyzing this

statute. This is sufficient because all agree that the constitutional provisions can be waived. They are forced on no one, if both agree to waive them. And this waiver can be by writing, or verbally done, or done by common consent or acquiescence.

The statute is one of much verbiage and prolixity of 51 lengthy sections. But once and for all it can be stated, and correctly stated, that under this statute every employer and every employé can have his day in court, and can have due process of law, and can have a jury trial if one or all are desired. No one of these constitutional rights is denied. It is true that such can be had with some limitation on what has heretofore existed, which limitations will presently be noted. Whether the parties are denied the fullest scope of the so-called liberty of contract is not longer argued with much seriousness by reason of the decision by the Supreme Court of the United States in the case from this state of Chicago, Burlington & Quincy Railroad v. McGuire, 219 U. S. 549, 31 Sup. Ct. 259, 55 L. Ed. 328.

[2] The first 22 sections of this lengthy statute fix the liability of the employer and the rights of the employé. A scale of compensation is fixed and made certain. Each party can come within the statute or remain outside of the statute. Each party has his election. Many of the states for many years have had statutes fixing the liability with precision in cases of death, and in no instance has any court held such statute invalid. And why a statute cannot fix with certainty the damages to be allowed in case of the loss of an arm, leg, eye, or other injury, is not perceived, and counsel fail to state any legal or constitutional objection thereto.

[3] But it is argued that, if the employer fails to elect to come within the statute and have the case tried and determined as heretofore, the employer cannot urge the defense of assumption of risks by the employé or contributory negligence. And yet each of these defenses first crept into the law by slight recognition and then grew and developed by judicial decisions without the aid of legislation. And it cannot be so that, simply because such became recognized as the law by judicial decisions, they cannot be abridged or denied by legislation. The same is true of the doctrine of fellow servants. That doctrine never was affirmed by legislation except impliedly, and impliedly only bcause of legislative action denying such a defense as to railroads and some other hazardous employments. All lawyers know that the court-made rule in Iowa, for a long time maintained but against the decided weight of authority, is that the injured person must show that he was without fault or negligence. Most of the appellate courts hold otherwise, holding that it is a defense only. United States courts sitting in Iowa, as well as in all the other states, hold that it is defensive only and requires the defendant to show by a preponderance of testimony that the injured man or deceased contributed to the injury. For a long time many of the states had the rule of comparative negligence, and now in some instances Iowa has such a rule. But in none of these matters is there any vested right for or against any of these defenses or burdens placed upon the plaintiff. They closely belong to or inhere in police regulations for the preservation of life and limb and are within the legislative powers of the state, and in interstate com-

merce matters within the powers of Congress. The decisions of appellate courts, the Supreme Court of the United States included, are recent and well known by the profession. It is true that, if the parties elect to come within the statute, they must do so by notice or by acquiescence. This is attended with some formalities, but that is a question of detail and policy alone belonging to the Legislature and outside the province of the courts to either regulate or condemn.

[4] The next 18 sections of the statute relate to the appointment of a commissioner, an office now held by the defendant Garst. Under his direction arbitrations are brought about. Arbitrations existed at common law, and they are allowable under the Iowa statute. The conclusion and award of an arbitrator can be enforced by judicial proceedings. There is nothing new about all this. And these arbitrations are agreed to under this statute either by specific agreement or by acquiescence.

[5] The remaining nine sections of the statute relate to insurance to cover liabilities for damages. The Chicago, Burlington & Quincy Railroad Company for years had a scheme of insurance which, if resorted to by the injured employé, was a bar to a recovery by an action in court. Finally that scheme was condemned by Iowa legislation, and the statute prohibiting it was sustained by the United States Supreme Court, affirming the Iowa Supreme Court in the McGuire Case, hereinbefore referred to. The insurance scheme was held lawful by the Iowa Supreme Court in a number of cases prior to the adoption of the legislation referred to. And now we have additional legislation allowing the very thing condemned by the prior legislation. And so it is that no constitutional objection can be made to the latest legislation.

Nearly all of the objections to this statute are argued from the standpoint of morals and propriety and policy. As of course those were questions for the Legislature. This statute may have, and no doubt does have, many objectionable features; but that it is a statute with right tendencies I have no doubt. And all such legislation is a matter of growth and development, and in the end when mature, as it ought to be and quite likely will be, beneficial results will be obtained. At all events, this legislation cannot bring forth worse results than we now have as to these matters by court procedure. And still further, and in no event, can courts condemn the mere policy or proprieties of the law. I find no constitutional objections to this measure.

Defendant's motion will be sustained, and the case dismissed, with prejudice.