## A. J. SCOTT v. NASHVILLE BRIDGE COMPANY.*

### (*Nashville.* December Term, 1919.)

1. **MASTER AND SERVANT.** Compensation Act not coercive in abolishing common-law defenses.

The Workmen's Compensation Act is not coercive because it deprives the employer of his common-law defences, if he elects not to accept the act; the Legislature. having the power to abolish such common-law defenses. (*Post, pp.* 86-101.)

Acts cited and construed: Acts 1919, ch. 123.

Cases cited and distinguished: Mackin v. Detroit Timken Axle Co., 187 Mich., 8; Young v. Duncan, 218 Mass., 346; State v. Pearce, 7 Tenn., 66; State v. Manley, 1 Tenn., 428; N. Y. C. R. R. Co. v. White, 243 U. S., 188; Borgnis v. Falk Co., 147 Wis., 427; Deibeikis v. Link Belt Co., 261 Ill., 454.

2. **STATUTES.** Compensation Act not broader than title, which refers to insurance companies.

The Workmen's Compensation Act is not broader than the title, in that the title mentions the regulation of the business of insurance companies writing workmen's compensation insurance under the act, whereas section 40 of the act provides "that very person, partnership, association, organization," etc., "is authorized to write accident or indemnity insurance," especially in view of Shannon's Code, section 3274, defining the term "company," and therefore does not contravene Constitution article 2, section 17. (*Post, pp.* 101-104.)

Cases cited and approved: State v. Stone, 118 Mo., 388; Singer Mfg. Co., v. Wright, 97 Ga., 114; Chicago Dock Co. v. Garrity, 115 Ill., 155.

---

*On constitutionality of workman's compensation and industrial insurance statutes, see notes in 34 L. R. A. (N. S.), 162; 37 L. R. A. (N. S.), 466; L. R. A., 1916A, 409; L. R. A., 1917D, 51.

On construction and effect of workman's compensation acts, generally, see notes in L. R. A., 1916A, 23; L. R. A., 1917D, 89.

Scott v. Nashville Bridge Co.

3. STATUTES. Compensation Act does not contain two subjects in referring to several systems of insurance.

Workmen's Compensation Act does not contravene Constitution, article 2, section 17, because the title and act each provides a system of workmen's compensation and also for a system of liability or accident insurance. (*Post, pp.* 104, 105.)

4. STATUTES. Compensation Act does not embrace more than one subject in providing exemption from claims of creditors.

Workmen's Compensation Act does not embrace more than one subject, in violation of Constitution, article 2, section 17, in that, in addition to providing for payment of compensation to injured employees, it provides that the sums paid shall be exempt from the claims of the employee creditors. (*Post, p.* 105.)

5. STATUTES. Compensation Act does not deny employees right to contract and not express such subject in title.

The Workmen's Compensation Act is not invalid as denying an employee the right to contract and not expressing such subject in the title, as required by Constitution, article 2, section 17. (*Post, p.* 105.)

6. STATUTES. Compensation Act does not contain two subjects in providing revenue for state and compensation to employees.

The Workmen's Compensation Act does not violate Constitution, article 2, section 17, providing that act should contain but one subject, in that it provides both revenue for State and compensation to employees, since the act would be a nullity if revenue could not be raised to carry out its provisions. (*Post, p.* 106.)

7. STATUTES. Constitutional provision as to embracing more than one subject in statute liberally construed.

Constitution, article 2, section 17, providing that no bill shall become a law which embraces more than one subject, that subject to be expressed in the title, is to be construed liberally rather than to embarrass legislation by a construction whose strictness is unnecessary to the accomplishment of the beneficial purpose for which it has been adopted. (*Post, p.* 106.)

Scott v. Nashville Bridge Co.

Cases cited and approved: Cannon v. Mathes, 55 Tenn., 504, Heiskell v. Knoxville, 136 Tenn., 376; State v. Cumberland Club, 136 Tenn., 84.

8. **STATUTES. Generality of title no objection.**

Generality of the title of a statute is no objection, under Constitution, article 2, section 17, so long as it is not made a cover to legislation incongruous in itself, and which by no fair intendment can be considered as having a necessary or proper connection, and it is not essential to the constitutionality of a statute that its title should epitomize or recite in detail the provisions contained in its body; all provisions directly or indirectly relating to the subject expressed in the title, having a natural connection therewith and not foreign thereto, being held to be properly embraced in it. (*Post, pp.* 106, 107.)

Cases cited and approved: Cole Mfg. Co. v. Falls; 90 Tenn., 466; Ryan v. Terminal Co., 102 Tenn., 111; State v. Yardley, 95 Tenn., 546; State v. Cumberland Club, 136 Tenn., 84; State v. Schlitz Brewing Co., 104 Tenn., 715; Memphis v. St. Ry. Co., 110 Tenn., 598.

9. **STATUTES. Workmen's Compensation Act does not repeal laws without reciting same in title.**

Workmen's Compensation Act does not contravene Constitution, article 2, section 17 because, it repeals former laws without reciting in its title or body the substance of the laws repealed; such constitutional provision referring alone to those acts which expressly repeal, revive, or amend former laws, and not embracing implied amendments or repeals. (*Post, p.* 107.)

Cases cited and approved: State v. Yardley, 95 Tenn., 558; Hunter v. Memphis, 93 Tenn., 571; Ballentine v. Mayor, 83 Tenn., 633; Home Insurance Co. v. Taxing Dist., 72 Tenn., 650; Poe v. State, 85 Tenn., 495; Railroad v. Crider, 91 Tenn., 507.

Constitution cited and construed: Art. 2, sec. 17.

10. **CONSTITUTIONAL LAW. Statute to be held valid if it can be sustained.**

When the classification made and stated in a statute is challenged as being arbitrary, unreasonable, and discriminatory, under Con-

stitution, article 11, section 8, if any state of facts reasonably can be conceived that would sustain it, the existence of the state of facts at the time the law was enacted must be assumed, and any one who assails the classification contained in the statute has the burden of showing that it does not rest on any reasonable basis, but is essentially arbitrary.   (*Post, p.* 108.)

Cases cited and approved: Motlow v. State 125 Tenn., 547; State v. Schlitz Brewing Co., 104 Tenn., 705; Ogilvie v. Hailey, 141 Tenn., 392.

11.  **CONSTITUTIONAL LAW.** Statutes may extend to all citizent or be confined to particular classes.

Statutes public in their character and otherwise unobjectionable may extend to all citizens or be confined to particular classes, under Constitution, article 11, section 8.   (*Post, pp.* 108-111.)

Cases cited and approved: Breyer v. State, 102 Tenn., 103; Sutton v. State, 96 Tenn., 696.

Cases cited and distinguished: Ogilvie v. Hailey, 141 Tenn., 392; City of Memphis v. State, 133 Tenn., 84.

12.  **CONSTITUTIONAL LAW.,** Workmen's Compensation Act not arbitrary and discriminatory in excluding coal mine operators.

The Workmen's Compensation Act is not arbitrary, unreasonable, and discriminatory, in violation of Constitution, article 11, section 8, in that it excludes from the operation of the statute coal mine operators and their employee and certain other employees. *Post, pp.* 111-114.)

Cases cited and approved: American Coal Co. v. Allegheny County, 128 Md., 564; Sayles v. Foley, 38 R. I., 488; Parker-Washington Co. v. Industrial Board, 274 Ill., 498.

Case cited and distinguished: Middleton. v. Texas Power & Light Co., 108 Tex., 96.

13.  **JURY.** Workmen's Compensation Act not unconstitutional as denying trial by jury.

The Workmen's Compensation Act is not violative of Constitution, article 1, section 6, because it denies trial of jury, since parties

by accepting the act waive the right to trial by jury, and hence are not deprived of that right; the statute being elective. (*Post,* *pp.* 113-115.)

Cases cited and approved: Trigally v. Memphis, 46 Tenn., 385; Marter v. Wear. 117 Tenn., 244; Woods v. State, 130 Tenn., 106; State ex rel. v. House, 134 Tenn., 67; Hawkins v. Beakley (D. C.), 220 Fed., 378; Deibeikis v. Link Belt Co., 261 Ill., 454; Hunter v. Colfax Consolidated Coal Co., 175 Iowa, 245; Greene v. Caldwell, 170 Ky., 571; Mathison v. Minn. St. Ry. Co., 126 Minn., 286; Sexton v. Newark Dist. Tel. Co., 84 N. J. Law, 85.

Constitution cited and construed: Art. 1, sec. 6.

Code cited and construed: Sec. 4613 (S.).

14. CONSTITUTIONAL LAW. Workmen's Compensation Act does not close courts and deny due process.

Workmen's Compensation Act does not close to employee the courts that were open prior to its passage, and does not deny a remedy by due process of law, in violation of Constitution article 1, section 17. (*Post, pp.* 115-117.)

15. CONSTITUTIONAL LAW. Provision that courts shall be open is mandate to judiciary and not Legislature.

Constitution, article 1, section 17, providing that all courts shall be open to every man, etc., who shall have a remedy by due process of law, is a mandate to the judiciary, and is not intended as a limitation on the legislative branch of the government. (*Post, pp.* 117, 118.)

Cases cited and approved: Bledsoe v. Wright, 61 Tenn., 471; Dodd v. Weaver, 34 Tenn., 672; Pawley v. McGimpsey, 15 Tenn., 502; Adams v. Iten Biscuit Co., 162 Pac., 938; Prescott v. Duncan, 148 S. W., 229; Harbison v. Knoxville Iron Company, 103 Tenn., 421.

Case cited and distinguished: Nance v. Piano Co., 128 Tenn., 1.

16. CONSTITUTIONAL LAW. Workmen's Compensation Act no deprivation of liberty or property.

The Workmen's Compensation Act does not violate Constitution, Article 1, section 8, providing that no man shall be taken or dis-

seized of his freehold, etc., or in any manner deprived of his life, liberty, or property but by the judgment of his peers or the law of the land. (*Post, pp.* 117, 118.)

17. **EMINENT DOMAIN.** Workmen's Compensation Act not taking of property without compensation.

Workmen's Compensation Act does not violate Constitution, article 1, section 21, providing that no man's particular services shall be taken or property taken or applied to public use without just compensation. (*Post, pp.* 118-120.)

Cases cited and approved: Nance v. Piano Co., 128 Tenn., 1; Harbison v. Knoxville Iron Co., 103 Tenn., 421; Munn v. Ill., 94 U. S., 113.

Case cited and distinguished: N. Y. Central R. R. Co. v. White, 243 U, S., 188.

Constitution cited and construed: Art. 1, sec. 21.

18. **CONSTITUTIONAL LAW.** Workmen's Compensation Act does not deprive employee of property without due process under federal Constitution.

Workmen's Compensation Act does not violate the Fourteenth Amendment of the federal Constitution on the ground that it deprives an employee of his property without due process of law. (*Post, p.* 120.)

Case cited and approved: Arizona Copper Co. v. Hammar, 250 U. S., 400.

19. **MASTER AND SERVANT.** Compensation Act not unconstitutional as binding minor employee.

Workmen's Compensation Act is not unconstitutional, in that it undertakes to make an election for and a binding contract upon a minor employee, when by reason of such minority he is unable to make such election or contract, since the act endows a minor, for the purpose of the act, with a power to elect. (*Post, p.* 120.)

20. **CONSTITUTIONAL LAW.** One not prejudiced cannot claim unconstitutionality of statute.

An adult employee is not in a position to challenge the Workmen's Compensation Act on the ground that it undertakes to make an election for a minor employee, if it does so. (*Post, p.* 120.)

21. **INFANTS.** Legislature may endow with power to make contracts.

Legislature has the power to endow minors to make contracts otherwise lawful, and after he has been so endowed he becomes an adult, or at least on the same plane. (*Post, p.* 120.) *pp.* 120, 121.)

Cases cited and approved: Borgnis v. Falk Co., 147 Wis., 327; Young v. Sterling Leather Works, 91 N. J. Law, 289.

22. **JUDGES.** Salary of county judge cannot be increased during term, being "judge of an inferior court."

A county judge is a "judge of an inferior court," within the meaning of Constitution, article 6, section 7, providing that the compensation of judges of inferior courts shall not be increased or diminished during the time for which they are elected. (*Post, pp.* 120-121.)

23. **JUDGES.** Workmen's Compensation Act unconstitutional in providing fees for county judge or chairman.

Workmen's Compensation Act is unconstitutional and void in so far as it provides a fee for a county judge or chairman of the county court, in view of Constitution article 6, section 7, providing that judges' compensation shall not be increased or diminished for the time for which they are elected. (*Post, pp.* 120, 121.)

24. **STATUTES.** Workmen's Compensation Act not unconstitutional as a whole.

Workmen's Compensation Act is not invalid and unconstitutional as a whole by reason of the invalidity of provision providing for fees of county judges or chairman of county courts, as such provision may be elided. (*Post. pp.* 120, 121.)

25. **STATUTES.** Unconstitutional severable provision of statute does not render same unconstitutional as a whole.

Where the provisions of a statute are severable and distinct, the unconstitutionality of one or more will not vitiate those which are valid and constitutional. (*Post, pp.* 120, 121.)

Cases cited and approved: State v. Glen, 54 Tenn., 472; State v. McKee, 76 Tenn., 24; State v. Leonard, 86 Tenn., 490; Judges' Cases, 102 Tenn., 571; State ex rel. v. Trewitt, 113 Tenn. 571, Jones

Scott v. Nashville Bridge Co.

v. Memphis, 101 Tenn., 188; McCamey v. Cummings, 130 Tenn., 505; Richardson v. Young, 122 Tenn., 523; Malone v. Williams, 118 Tenn., 439.

Constitution cited and construed: Art. 6, sec. 7.

26  MASTER AND SERVANT.  Compensation Act not unconstitutional in requiring physical examination.

Workmen's Compensation Act is not unconstitutional because the provisions contained in section 25 thereof require an injured employee to submit to an examination and accept medical services, and deny to him the right of compensation so long as he refuses. (*Post, pp.* 123-125.)

BACHMAN, J., dissenting.

---

FROM DAVIDSON.

---

Error to the Circuit Court of Davidson County.—HON. A. B. NEIL, Judge.

ATKINSON & ATKINSON, J. B. DANIEL and GEO. E. KENNARD, for plaintiff in error.

AUST & McGUGIN, CECIL SIMS and JNO. M. CATE, for defendant in error.

MR. JUSTICE HALL delivered the opinion of the Court.

The sole question involved in this case is the constitutionality of chapter 123 of the Public Acts of the General Assembly of 1919, commonly known as the "Workmen's Compensation Act."

The appellant, A. J. Scott (plaintiff below) brought a common-law action in the circuit court of Davidson coun-

ty against the Nashville Bridge Company to recover damages for personal injuries alleged to have been sustained by him through the negligence of said bridge company on the ——— day of October, 1919, while in its employ, and subsequent to the date upon which the act above referred to went into effect, which was July 1, 1919.

The defendant, Bridge Company, filed a special plea, setting up the fact that the defendant was engaged, at the time the appellant sustained his injuries, in structural iron work and bridge building; that it had in its employ regularly more than ten employees, and that the alleged injuries to appellant arose out of and in the course of his regular employment; that under the terms of chapter 123 of the Acts of 1919, both the plaintiff and defendant had elected to accept and operate under the provisions of said act, and that defendant had complied with all the provisions of said act, and was ready, able, and willing to pay to appellant compensation for his injuries in accordance with the terms and provisions of said act, and that said act was a bar to his common-law action.

To this special plea appellant demurred, his grounds of demurrer being that the act was violative of the Constitutions of the State and of the United States in the particulars hereinafter referred to.

After consideration of the demurrer and appellant's declaration, the circuit judge overruled the demurrer, holding that the act was constitutional and valid.

Thereupon the parties agreed, in open court, that the facts set forth in the special plea were true, and a judgment of the court was asked upon the defendant's plea

and stipulation. Whereupon the court dismissed appellant's suit. To this action he excepted, and prayed and perfected an appeal to this court, and has assigned numerous errors.

The act under consideration is very voluminous and contains many sections, and we will not undertake to set out the act in its entirety in this opinion, but only such sections as we deem material in the determination of the questions presented for decision: The title of the act is as follows:

"An act to provide an elective system of workmen's compensation for industrial accidents; to prescribe the manner of election and the rights and liabilities of employers, employees, and third parties; to define and regulate the liability of employers to employees for injuries sustained by such employees in the course of their employment resulting in disability or death; to provide medical and surgical care for such injured employees; to provide compensation for injured employees; or in case of death, for the dependents of such employees, to make claims payable hereunder preferred claims, and to make all sums paid as compensation under this act exempt from the claims of creditors; to provide methods for insuring and securing the payment of such compensation; to make minors *sui juris* for certain purposes; to prescribe a method for the execution of this act and for the determination of liability of employers to employees for compensation, and to regulate the procedure in such cases; to provide revenue for the administration of this act; to provide for and regulate the business of insurance companies writing work-

men's compensation insurance under this act, and to impose fees upon such insurance companies and upon employers and employees who are subject to this act; to provide penalties for violations of this act; and to make appropriations out of the revenue of the State for the purpose of executing and administering this act."

Section 1 of said act provides that it shall be known as the "Workmen's Compensation Act."

By section 3 it is provided as follows:

"Be it further enacted, that from and after the taking effect of this act, every employer and every employee, except as herein stated, shall be presumed to have accepted the provisions of this act, respectively to pay and accept compensation for personal injury or death by accident arising out of and in the course of the employment, and shall be bound thereby unless he shall have given, prior to any accident resulting in injury or death, notice to the contrary in the manner herein provided."

Section 4 provides that either an employer or employee who has excepted himself by proper notice from the operation of the act may at any time waive such exemption and later accept its provisions. If the employer elects not to accept the provisions of the act, he shall give notice in the form and manner therein provided. If the employee elects not to accept the provisions of the act, he shall likewise give notice as provided in said section.

Section 6 provides that the provisions of said act shall not apply to the following classes of persons:

"(a)   Any common carrier doing an interstate business while engaged in interstate commerce.

Scott v. Nashville Bridge Co.

"(b) Any person whose employment at the time of injury is casual, that is, one who is not employed in the usual course of trade, business, profession or occupation of the employer.

"(c)   Domestic servants and employers thereof, nor, to farm or agricultural laborers and employers thereof.

"(d)   In cases where less than ten persons are regularly employed; provided, however, that in such cases the employer may accept the provisions of this act by filing written notice thereof with the State factory inspector at least thirty days before the happening of any accident or death, and may at any time withdraw the acceptance by giving like notice of withdrawal.

"(e)   To the State of Tennessee, counties thereof and municipal corporations; provided, however, that the State, any county or municipal corporation may accept the provisions of this act by filing written notice thereof with the State factory inspector at least thirty days before the happening of any accident or death and may at any time withdraw the acceptance by giving like notice of the withdrawal.

"This act shall not apply to employers engaged in the operation of coal mines nor to the employees thereof, except, that any employer engaged in the operation of a coal mine or mines, may accept the provisions of this act by filing written notice thereof with the State factory inspector at least thirty days before the happening of any accident or death, and may at any time withdraw the acceptance by giving like notice of withdrawal."

143 Tenn.—7

By section 11 it is provided that every employer who elects not to operate under said act as therein provided shall not, in any suit brought against him, by an employee who has elected to operate under the provisions of said act, to recover damages for personal injury or death arising from accident, be permitted to defend such suit upon any of the following grounds, viz.:

"(a)    That the employee was negligent.

"(b)    That the injury was caused by the negligence of a fellow servant or fellow employee.

"(c)    That the employee had assumed the risk of the injury."

Section 12 provides that every employee who elects not to operate under the provisions of the act, in any action to recover damages for personal injury or death by accident brought against an employer who has elected to operate under the act, shall proceed as at common law, and the employer in such suit may avail himself of all common law defenses.

Section 13 provides that, when both employer and employee elect not to operate under the act, the liability of the employer for injury or death from accident shall be the same as at common law, and the employer may avail himself of all common-law defenses in actions brought by such employee to recover damages for personal injury or death due to accident.

It will be noted from the provisions of the foregoing sections of said act that, if an employer and employee do not elect to accept the act, the rights and remedies of each remain as they were before the passage of the act. If the

employer elects to accept the act and the employee does not, then the employer's rights and remedies remain as they were before the passage of the act. If the employee elects to accept the act and the employer does not, then the employer is deprived/ of the three common-law defenses in any suit which may be brought against him by an employee to recover damages for an injury to such employee, to-wit: Contributory negligence, negligence of a fellow servant, and assumption of risk. If both elect to accept the act (and their election is presumed in the absence of notice to the contrary), then the employer must pay to the employee compensation for his injuries according to the schedule set forth in section 28 of the act, without respect to whether the employee was negligent or not.

Section 10 provides, however, that if injury or death results from the willful misconduct of the employee, or injury intentionally self-inflicted, or by reason of intoxication or willful refusal to use a safety appliance, he shall not be entitled to compensation.

It is insisted by counsel for appellant that the act is coercive and not elective, because:

(1)    The employee is presumed to have elected to accept the act, whether he actually knows of it or not, unless he gives notice to the contrary; and

(2)    It is coercive as to the employer because if he does not elect to accept its provisions he is deprived of his common-law defenses.

In the case of *Mackin* v. *Detroit Timken Axle Co.,* 187 Mich., 8, 153 N. W., 49, in which case the constitutionality of a similar act was involved, the court said:

"No constitutional provision is pointed out which prohibits the Legislature, in framing this law, to best avoid uncertainty and contention tending to litigation, from adopting a rule of conclusive presumption upon the question of notice so long as the employee was left in the first instance free to forestall, overcome, or prevent such presumption by his own act if he so desired.

"This being true, the constitutional objections raised, which are necessarily founded upon the idea of coercion, disappear because the employee has had a free choice, and by having failed to give notice, must be held to have elected his remedy under the Workmen's Compensation Law. Such legal presumptions are not unconstitutional or uncommon. A familar illustration is the conclusive presumption that a party entitled to jury trial . . . has waived his right and elected to go to trial without a jury unless he took some affirmative action and made demand before a certain time or point of progress in the case arrived."

In the case of *Young* v. *Duncan*, 218 Mass., 346, 106 N. E., 1, the court was there passing upon the Workmen's Compensation Act of the state of Massachusetts, and, in discussing the very question presented by appellant in the instant case, said:

"No complaint justly can be made that the section compels the employee to elect without sufficient knowledge. Ignorance of the law commonly is no excuse for conduct or failure to act. . . . Knowledge as to interstate commerce rates may be inaccessible without very considerable inquiry, and yet shippers or passengers may be bound by them although ignorant of their terms. . . . The pos-

sibility that the employee in a given instance may not know all his rights does not affect the constitutional aspects of the law. Many crimes even are made to depend, solely, upon the doing of an act with the utmost moral innocence and in ignorance of any forbidding aspect of the act."

In *State* v. *Pearce,* Peck, 66, it is said: "Every man is presumed to know the law; a contrary doctrine being incompatible with the nature of civil society."

In *State* v. *Manley,* 1 Overt., 428, it is said: "Every member of the community is bound to know the law, and it furnishes no excuse that he was badly advised."

As to appellant's contention that the act is coercive because it deprives the employer of his common-law defenses if he elects not to accept the act, we do not think that the power of the Legislature to abolish these common-law defenses can be seriously questioned. These defenses are creatures of judicial opinion, and are not guaranteed or protected by the Constitution. This being true, the Legislature may modify or abolish them, as it sees fit. Their complete abolition does not render the act in question compulsory as to employers.

In the case of *N. Y. C. R. R. Co.* v. *White,* 243 U. S., 188, 37 Sup. Ct., 247, 61 L. Ed., 667, L. R. A., 1917D, 1, Ann. Cas., 1917D, 629, it was held:

That the "employer has no vested right to have the so-called common-law defenses perpetuated for his benefit, and that the Fourteenth Amendment does not prevent a State from establishing a system of workmen's compensa-

tion without the consent of the employer, incidentally abolishing the defenses referred to."

This question is fully considered by the Supreme Court of Wisconsin in *Borgnis* v. *Falk Co.*, 147 Wis., 327, 133 N. W., 209, 37 L. R. A. (N. S.), 489. In that case the court said:

"Passing from these questions of classification we meet the objection that the law, while in its words presenting to employer and employee a free choice as to whether he will accept its terms or not, is in fact coercive, so that neither employer nor employee can be said to act voluntarily in accepting it.

"As to the employer, the argument is that the abolition of the two defenses is a club which forces him to accept; and as to the employee, the argument is that if his employer accepts the law the employee will feel compelled to accept also through fear of discharge if he do not accept.

"Both of these arguments are based upon conjecture. Laws cannot be set aside upon mere speculation or conjecture. The court must be able to say with certainty that an unlawful result will follow. We do not see how any such thing can be said here. No one can say with certainty what results will follow in the practical workings of the law. . . . These matters are, however, purely speculative and conjectural; none can say what the practical operation of the law will be. It is enough for our present purpose that no one can say with certainty that it will operate to coerce either employer or employee."

To the same effect is the ruling of the Supreme Court of Illinois in the case of *Deibeikis* v. *Link Belt Co.,* 261 Ill., 454, 104 N. E., 211, Ann. Cas., 1915A, 241.

It is insisted that the act contravenes section 17 of article 2 of the Constitution of the State, which provides: "No bill shall become a law which embraces more than one subject, that subject to be expressed in the title."

It is said that the act embraces more than one subject, and that it embraces subjects not expressed in its title, and that it repeals and amends former laws without reciting in the caption the title or substance of the laws repealed or amended.

It is first insisted that the act is broader than the title, in that the title mentions the regulation of the business of insurance companies writing workmen's compensation insurance under the act, whereas section 40 of the act provides:

"That every person, partnership, association, organization, or corporation, whether organized under the laws of this or any other State or county, which has or may hereafter comply with the laws of the State of Tennessee, and is authorized to write accident or indemnity insurance in the State of Tennessee, shall be authorized and empowered to write workmen's compensation insurance under the terms and provisions of this act and likewise every reciprocal or mutual insurance association or corporation shall have the like privilege, and shall be subject to the same tax on premiums now imposed by law on casualty or indemnity insurance underwriters."

It is said that, while the title only embraces the regulation of insurance companies, the body of the act relates to "every person, partnership, association, organization, or corporation," writing workmen's compensation insurance under said act. It is insisted that the words "person, partnership, association, organization, or corporation," are broader than the term "insurance companies," which is the subject expressed in the title.

Our general insurance statute provides that the term "company" includes "corporations, associations, partnerships and individuals." Shannon's Code, section 3274. Also such is the holding in many cases, some of which are as follows: *State* v. *Stone,* 118 Mo., 388, 24 S. W., 164, 25 L. R. A., 243, 40 Am. St. Rep., 388; *Singer Mfg. Co.* v. *Wright,* 97 Ga., 114, 25 S. E., 249, 35 L. R. A., 497; *Chicago Dock Co.* v. *Garrity,* 115 Ill., 155, 3 N. E., 448.

It is also said that both the title and the act contain two subjects, because each provides for a system of workmen's compensation, and also for a system of liability or accident insurance.

It is provided by section 41 of the act that the compensation shall be secured to the employees in one of two modes. Either the employer shall insure his liability under the act with an insurance company authorized to do business in the State or shall furnish to the insurance commissioner satisfactory proof of his financial ability to pay all claims that may arise against him.

We think this provision of the act is germane to the general subject, in that it requires the employer to secure the compensation which may accrue, and thus prevents an

insolvent or irresponsible employer from defeating the payment of the compensation for which the act provides. It is not a matter foreign to the subject of workmen's compensation, but is only a means provided for the securing of the compensation which the act provides.

It is also said that the act embraces more than one subject, in that, in addition to providing for the payment of compensation to injured employees, it provides that the sums paid shall be exempt from the claims of the employees' creditors.

We think this is pertinent and germane to the subject of workmen's compensation, the purpose of this provision being to secure to injured employees reasonable compensation, so as to prevent them from becoming public charges, and, in the event of death, to secure the compensation provided by said act to their dependents. Providing that the compensation shall be exempt from the claims of creditors only renders certain the provisions of the act.

It is next insisted that the act denies the employee the right to contract, and that this subject is not expressed in the title.

We are of the opinion that this insistence is not well grounded. Both the title and body of the act expressly declare that the act is elective. Employees may accept the act and agree to work under its terms, or not. They are given free choice, and no right or remedy is taken away from an employee who elects not to accept the provisions of the act.

It is next insisted that both the title and body of the act contain two subjects, in that they provide revenue for the State and compensation to employees.

The act does provide for the imposition of fines, after conviction, in case of a violation of certain of its provisions, and it does make appropriation from the revenues of the State of such sums as may be necessary to carry out the provisions of the act. To withhold the necessary revenue to carry out the provisions of the act would render it a nullity.

The general disposition of the courts is to construe this provision of the Constitution liberally rather than to embarrass legislation by a construction whose strictness is unnecessary to the accomplishment of the beneficial purposes for which it has been adopted. *Cannon* v. *Mathes,* 8 Heisk., 504; *Heiskell* v. *Knoxville,* 136 Tenn., 376, 189 S. W., 857; *State* v. *Cumberland Club,* 136 Tenn., 84, 188 S. W., 583.

The generality of the title is no objection to it, so long as it is not made a cover to legislation incongruous in itself, and which by no fair intendment can be considered as having a necessary or proper connection. *Cole Mfg. Co.* v. *Falls,* 90 Tenn., 466, 16 S. W., 1045; *Ryan* v. *Terminal Co.,* 102 Tenn., 111, 50 S. W., 744, 45 L. R. A., 303; *State* v. *Yardley,* 95 Tenn., 546, 32 S. W., 481, 34 L. R. A., 656; *State* v. *Cumberland Club,* 136 Tenn., 84, 188 S. W., 583.

It is not essential to the constitutionality of a statute that its title should epitomize or recite in detail the provisions contained in its body. All provisions of the act

which directly or indirectly relate to the subject expressed
in the title, and having a natural connection therewith and
not foreign thereto, should be held to be embraced in it.
*State* v. *Schlitz Brewing Co.,* 104 Tenn., 715, 59 S. W.,
1033, 78 Am. St. Rep., 941; *Memphis* v. *St. Ry. Co.,* 110
Tenn., 598, 75 S. W., 730; *Cannon* v. *Mathes, supra.*

It is next insisted that the act contravenes section 17 of
article 2 of the Constitution, because it repeals former laws
without reciting in its title or body the substance of the
laws repealed.

A sufficient answer to this contention is that the act
does not expressly purport to repeal, revive, or amend any
other act. It simply repeals by implication. The consti-
tutional provision referred to relates alone to those acts
which expressly repeal, revive, or amend former laws, and
does not embrace implied amendments. *State* v. *Yardley,*
95 Tenn., 558, 32 S. W., 481, 34 L. R. A., 656; *Hunter* v.
*Memphis,* 93 Tenn., 571, 26 S. W., 828; *Ballentine* v.
*Mayor,* 15 Lea, 633; *Home Insurance Co.* v. *Taxing Dis-
trict,* 4 Lea, 650; *Poe* v. *State,* 85 Tenn., 495, 3 S. W., 658;
*Railroad* v. *Crider,* 91 Tenn., 507, 19 S. W., 618.

It is next insisted that the act violates section 8 of
article 11 of the State Constitution because: (1) Coal
mine operators and their employees are exempted from
the operation of the act while all other mine operators and
their employees are included; and (2) the act exempts
domestic and agricultural servants, casual employees, and
all other industries having less than ten regular employees.
The contention is that this classification is arbitrary, un-
reasonable, and discriminatory.

It has been held by this court that when the classification made and stated in a statute is challenged, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. It is also the rule that one who assails the classification contained in a statute has the burden of showing that it does not rest on any reasonable basis, but is essentially arbitrary. *Motlow* v. *State,* 125 Tenn., 547, 145 S. W., 177, L. R. A., 1916F, 177; *State* v. *Schlitz Brewing Co.,* 104 Tenn., 715, 59 S. W., 1033, 78 Am. St. Rep., 941; *Ogilvie* v. *Hailey,* 141 Tenn., 392, 210 S. W., 645.

It is the general rule that statutes public in their character, and otherwise unobjectionable, may extend to all citizens or be confined to particular classes. Cooley on Const. Lim., p. 390; *Breyer* v. *State,* 102 Tenn., 103, 50 S. W., 769; *Sutton* v. *State,* 96 Tenn., 696, 36 S. W., 697, 33 L. R. A., 589.

In this latter case it was held, however, that statutes which are intended to affect a particular class, and not the public at large, must be so framed as to extend to and embrace all persons who are or may be in a like situation or circumstance, and also the classification must be natural and reasonable.

In *Ogilvie* v. *Hailey,* 141 Tenn., 392, 210 S. W., 645, this court said:

"The later decisions of this court and of the federal Supreme Court have conceded to the Legislature a very wide range of discretion in the matter of classification in police statutes and revenue statutes. The idea is that, if

any possible reason can be conceived to justify the classification, it will be upheld."

In *City of Memphis* v. *State,* 133 Tenn., 84, 179 S. W., 631, L. R. A., 1916B, 1115, Ann. Cas., 1917 C, 1056, chapter 60 of the Acts of 1915, was invalid and was an act passed for the regulation of a class of motor vehicles which had, recently before the passage of the act, been brought into service in the principal cities of the State, commonly known as "jitneys." The act required that before using the streets of the city the owner should file a bond with sufficient surety or sureties for not less than $5,000 for each jitney operated, conditioned to pay any damages that might be adjudged against the jitney owner for loss of life, or injury to person or property.

The constitutionality of this act was assailed because it did not include privately owned motor vehicles, which were identical in structure, were propelled in the same way, and used alone for carrying passengers. The act was further assailed upon the ground that it did not include taxicabs, which were motor passenger vehicles performing a similar service, traveling the streets of the city, and carrying passengers for compensation the same as jitneys.

This court held that the law was valid, and concluded that the Legislature, in all probability, thought taxicabs did not use the most traveled streets, or that it might be that larger investments were required to enter the taxicab business, and that the conveyances would be less in number. In that case this court said:

"Mathematical or logical exactness, in every aspect, in a division for classification is not always possible, and it is

not required in order to validity. 'The best that can be done is to keep within the clearly reasonable and practicable. That is accomplished where there are such general characteristics of the members of the class as to reasonably call for special legislative treatment.' "

It is well-known legislative history that in this State coal mines have been dealt with independently by the Legislature, and that many statutes have been enacted relating to coal mines that have no relation to any other industry in the State.

For illustration, chapter 24 of the First Extra Session of the Legislature of 1913, requires every operator of a coal mine to provide and keep in a convenient place at or near the mouth of said mine, and in a room where the same shall be well protected, suitable stretchers, bandages, and medicines for the first aid to the injured in and about said mine.

Another act was passed by the Legislature in 1881, which has been carried into Shannon's Annotated Code at section 3079a163, requiring every coal mine operator to provide at or near the mouth or entrance of such mine a place where men employed therein can wash and change their clothes when entering the mine or returning therefrom.

By the act of 1881 it is also provided that all boilers used for generating steam in and about coal mines or collieries shall be kept in good order, and the owner or agent thereof shall have them examined and inspected by a competent board of boiler inspectors, as provided for in the case of steam navigation, railroads, etc., as often as once

Scott v. Nashville Bridge Co.

every six months, and oftener if needed, and the result of such examination, under oath, shall be certified in writing to the inspector for the district; and all machinery in and about the mines, and especially in the coal breakers, where boys work, shall be properly fenced off, and the top of such shaft shall be securely fenced off by vertical or flat gates covering the area of said shaft, and the entrance of every abandoned slope and other air shafts shall be securely fenced off.

Other acts could be cited, but this is sufficient to show that the Legislature, for obvious reasons, has classified coal mining in a class to itself because it is attended with risks and dangers which distinguish it from all other mining industries.

The question of unlawful classification presented by appellant in the instant case has been passed on by the Supreme Courts of other States in cases where the constitutionality of Workmen's Compensation Acts has been challenged.

In *Middleton* v. *Texas Power & Light Co.,* 108 Tex., 96, 185 S. W., 556, the Supreme Court of Texas held that the exclusion of domestic servants, farm laborers, employees of any person, firm, or corporation operating any railway as a common carrier, cotton gin employees, and the employees of any person, firm, or corporation having in his or their employ not more than five employees, from the provisions of the Workmen's Compensation Act of the State of Texas did not render the act unconstitutional because of its classification. The Supreme Court of Texas, in sustaining the act, said:

"Employees of railroads, those of employers having less than five employees, domestic servants, farm laborers and gin laborers are excluded from the operation of the act, but this was doubtless for reasons that the Legislature deemed sufficient. The nature of these several employments, the existence of other laws governing liability for injuries to railroad employees, known experience as to the hazards and extent of accidental injuries to farm hands, gin hands and domestic servants, were all matters no doubt considered by the Legislature in exempting them from the operation of the act. Distinctions in these and other respects between them and employees engaged in other industrial pursuits may, we think, be readily suggested. We are not justified in saying that the classification was purely arbitrary."

This case was carried by writ of error to the Supreme Court of the United States, and that court, in an opinion by Mr. Justice PITNEY, said:

"There is a strong presumption that a Legislature understands and correctly appreciates the needs of its own people, that its laws are directed to problems made manifest by experience, and that its discriminations are based upon adequate grounds. The equal protection clause does not require that State laws shall cover the entire field of proper legislation in a single enactment. If one entertained the view that the act might as well have been extended to other classes of employment, this would not amount to a constitutional objection." 249 U. S., 157, 39 Sup. Ct., 229, 63 L. Ed., 527.

The Maryland act was held not to be invalid as class legislation because its provisions apply only to those engaged in mining coal and clay in two designated counties. *American Coal Co. v. Allegheny County*, 128 Md., 564, 98 Atl., 143. The court, in sustaining the act, said that there could be no serious objection to the classification of those engaged in mining coal and clay in a group by themselves, although there are other dangerous occupations to which the law does not apply, and the restriction of the law to the designated counties could prove no stumbling block to the legislation, for such local limitations are recognized as legal and proper, if all within the selected locality are treated alike and the locality itself is broad enough to work no harmful discrimination.

In *Sayles* v. *Foley*, 38 R. I., 488, 96 Atl., 340, it was held that the exclusion of domestic and agricultural employees, or casual employees, and of employees of employers of five or less workmen, did not render the Rhode Island act unreasonable and discriminatory. In that case it was also held that the exclusion from the act of employees receiving more than $1,800 per year was not an unreasonable classification, as in most employments involving considerable danger of injury from accident the employee receiving such a salary or wage may be presumed to be exposed to less danger of accident than the ordinary workman.

The Illinois act was held not to be unconstitutional upon the ground that section 31 requires an unreasonable and arbitrary classification, in that it sets apart contrac-

143 Tenn.—8

tors from all classes of persons, and imposes a burden upon them that if they fail to require subcontractors to insure, thus arbitrarily distinguishing also one class of contractors from another class. *Parker-Washington Co.* v. *Industrial Board,* 274 Ill., 498, 113 N. E., 976.

It is next insisted that the act is violative of section 6 of article 1 of the State Constitution, because it denies trial by jury. The section of the Constitution referred to provides:

"That the right of trial by jury shall remain inviolate, and no religious or political test shall ever be required as a qualification for jurors."

Section 32 of the act in question provides: "The cause shall be heard by the circuit judge without a jury and as other nonjury civil cases are heard in the circuit court. Neither party shall have the right to demand a jury."

The constitutional provision above referred to only protects the right of trial by jury as it existed at common law. *Trigally* v. *Memphis,* 6 Cold., 385; *Marter* v. *Wear,* 117 Tenn., 244, 96 S. W., 447; *Woods* v. *State,* 130 Tenn., 106, 169 S. W., 558, L. R. A., 1915F, 531; *State ex rel.* v. *Howse,* 134 Tenn., 67, 183 S. W., 510, L. R. A., 1916D, 1090, Ann. Cas., 1918C, 1125.

The act in question confers rights and remedies that were unknown to the common law. The act is elective. If the employee accepts the provisions of the act, it thereby becomes a part of his contract of employment, and he waives his right to trial by jury and accepts the compensation and remedies provided by the act.

Scott v. Nashville Bridge Co.

It is provided by statute that, on a failure to demand or call for a jury in the first pleading tendering an issue, or on the first day of the term at which the suit stands for trial, a jury trial is conclusively presumed to have been waived.  Shannon's Code, section 4613.

A jury may be waived by parties falling within the provisions of the Workmen's Compensation Act by their voluntary acceptance of the terms of said act.

It has been invariably held that, under the voluntary or elective Workmen's Compensation Acts, parties, by accepting the act, waive the right to a jury trial; hence there is no deprivation of that right.  *Hawkins* v. *Beakley,* (D. C.), 220 Fed., 378 (sustaining the Iowa act); *Deibeikis* v. *Link Belt Co.,* 261 Ill., 454, 104 N. E., 211, Ann. Cas., 1915A, 241; *Hunter* v. *Coffar Consolidated Coal Co.,* 175 Iowa, 245, 154 N. W., 1037, 157 N. W., 145, L. R. A., 1917D, 15, Ann. Cas., 1917E, 803; *Greene* v. *Caldwell,* 170 Ky., 571, 186 S. W., 648, Ann. Cas., 1918B, 604; *Mathison* v. *Minn. St. Ry. Co.,* 126 Minn., 286, 148 N. W., 7, L. R. A., 1916D, 412; *Sexton* v. *Newark Dist. Tel. Co.,* 84 N. J. Law, 85, 86 Atl., 451.

It is next insisted that the act violates section 17 of article 1 of our State Constitution, which reads as follows: "That all courts shall be open; and every man, for any injury done him in his lands, goods, person or reputation, shall have a remedy by due course of law, and right and justice administered without sale, denial or delay."

It is insisted by plaintiff that the act closes the courts to him that were open prior to its passage, and denies him a remedy by due course of law.

We do not think such is the effect of the act.   Section 32 provides as follows:

"That in case of a dispute over or failure to agree upon compensation under this act between the employer and employee, or the dependent of the employee, either party may submit the entire matter for determination to the judge or chairman of the county court in which the accident occurred and such judge or chairman is hereby vested with jurisdiction to hear and determine the issues and render judgment and enforce the same in the same manner as courts  .  .  .   render and enforce judgment.

"The county judge or chairman shall have power to subpoena witnesses, administer oaths.  .  .  .   Either party dissatisfied with the judgment of the judge or chairman may appeal as in any other civil cases to the next term of the circuit court of the county where the cause will be heard by the circuit judge *de novo*.  .  .  .   The party filing the petition may, at his option, instead of filing the same before the county judge or chairman file the same as an original petition in either circuit, criminal, or chancery court of the county in which the petitioner resides or in which the alleged accident happened, in which event summons shall be issued by the clerk of the court in which the proceeding is instituted, and shall be returned before said court within the time provided for proceedings before a county judge or county chairman.  .  .  .   Any party to the proceedings in the circuit, criminal or chancery court may, if dissatisfied or aggrieved by the judgment or decree of that court, pray an appeal in the nature of a

writ of error to the Supreme Court of Tennessee, where the cause shall be heard and determined in accordance with the practice governing other appeals in the nature of a writ of error in civil causes."

The provision of section 17 of article 1 of our State Constitution is a mandate to the judiciary, and was not intended as a limitation of the legislative branch of the government. *Bledsoe* v. *Wright,* 2 Baxt., 471; *Dodd* v. *Weaver,* 2 Sneed., 672; *Pawley* v. *McGimpsey,* 7 Yerg., 502.

In the case of *Adams* v. *Iten Biscuit Co.,* 162 Pac., 938, the Supreme Court of Oklahoma held that the Workmen's Compensation Act of that State was not violative of a similar clause in its Constitution.

The act being optional and not compulsory, plaintiff's contention that it deprives him of a remedy given him by due course of law is not tenable. It is true that the remedy which he had prior to the passage of the act, that is, the common-law remedy, has been taken away, but this the Legislature had the power to do, as was ruled by this court in *Nance* v. *Piano Co.,* 128 Tenn., 1, 155 S. W., 1172, Ann. Cas., 1913D, 834. In that case this court said:

"The suggestion in briefs that the common law as it existed at the time of the adoption of our Constitution was transfixed by that event into a rigid and inflexible system of laws, which could not be changed by the Legislature, is one that is not entitled to serious consideration.

"The only relation which the system of laws in force at the time of the adoption of the Constitution has to the construction of that instrument is to furnish a definition

and proper interpretation of terms used in the Constitution with reference to the system of laws. The 'law of the land,' as used in the Constitution, did not embrace as a fixed and immovable system the common law in existence at the time. It had reference to the common and statute law then existing in this State, but this does not mean that it is not competent for the Legislature to alter, change, or abolish the system of law in force at the time of the adoption of the Constitution, and it may do so, unless it is prohibited from so doing by the Constitution of this State or of the United States. . . . *Prescott* v. *Duncan,* 148 S. W., 229; *Harbison* v. *Knoxville Iron Company,* 103 Tenn., 421.

It is next said that the act violates section 8 of article 1 and section 21 of article 1 of our State Constitution. Section 8 of article 1 is as follows:

"That no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land."

Section 21 of article 1 reads:

"No man's particular services shall be demanded, or property taken, or applied to public use, without the consent of his representatives, or without just compensation being made therefor."

It is insisted that the act violates the foregoing provisions of our State Constitution, because it deprives the plaintiff of a property right, and takes the same without just compensation being made therefor.

Section 21 of the act reads as follows: "Be it further enacted, that this act shall have no retroactive effect, and shall not apply to actions for accidental injury or death, occurring prior to the passage of this act, but claims for damages with respect thereto shall be redressed by the law as it stood prior to the enactment of this statute."

An employee has no property right in the common-law rules of liability applicable to relation of employer and employee prior to the occurrence of an injury, within the meaning of and as protected by the above-quoted sections of the Constitution. *Nance* v. *Piano Co., supra;* *Harbison* v. *Knoxville Iron Co.,* 103 Tenn., 421, 53 S. W., 955, 56 L. R. A., 316; *New York Central Railroad Co.* v. *White, supra;* *Middleton* v. *Light Co., supra.*

In the case of *New York Central Railroad Co.* v. *White, supra,* the constitutionality of the Workmen's Compensation Act of the State of New York was involved. The court, speaking through Mr. Justice PITNEY, said:

"The close relation of the rules governing responsibility as between employer and employee to the fundamental rights of liberty and property is of course recognized. But these rules, as guides of conduct, are not beyond alteration by legislation in the public interest. No person has a vested interest in any rule of law entitling him to insist that it shall remain unchanged for his benefit. *Munn* v. *Ill.,* 94 U. S., 113. . . .

"The common law bases the employer's liability for injuries to the employee upon the ground of negligence; but negligence is merely the disregard of some duty imposed by law; and the nature and extent of the duty may be

modified by legislation with corresponding change in the test of negligence. Indeed, liability may be imposed for the consequences of a failure to comply with a statutory duty, irrespective of negligence in the ordinary sense; safety appliance acts being a familiar instance."

It is next insisted that the act violates the Fourteenth Amendment of the federal Constitution, because it de-prives the plaintiff of his property without due process of law.

This question was settled adversely to the contention of the plaintiff in *New York Central Railroad Co.* v. *White*, *supra*, and the Case of *Arizona Copper Co.* v. *Hammar*, 250 U. S., 400, 39 Sup. Ct., 553, 63 L. Ed., 1058.

It is next said that the act is unconstitutional, in that it undertakes to make an election for and a binding con-tract upon a minor employee, when, by reason of such minority, he is unable to make such election or contract.

In the caption to the act it is set forth as being one of the purposes of the act "to make minors *sui juris* for cer-tain purposes."

In section 2, subsec. b, of the act, it is provided: " 'Em-ployees' shall include every person, including a minor, in the service of an employer, . . . under any contract of hire, apprenticeship, written or implied."

The second paragraph of section 7 of the act is as fol-lows: "Whenever payment is made to any person eighteen (18) years of age or over the written receipt of such per-son shall acquit the employer."

In section 31, subsec. 4, it is provided: "In case of physical or mental incapacity, other than minority, of the

injured person, . . . the period of limitation in any such case shall be extended for one year from the date when such incapacity ceases."

We are of the opinion that the plaintiff is not in a position to challenge the act upon the ground that it undertakes to make an election for a minor employee, because it is not shown that plaintiff is a minor; in fact, we do not understand that it is claimed that he is a minor, and therefore has no interest in the provisions of the act relating to minors.

However, we think there is no question as to the power of the Legislature to endow minors with the right to make contracts otherwise lawful, and after he has been so endowed he becomes, for the purpose of the act, an adult, or, at least, on the same plane. It was expressly so ruled in the case of *Borgnis* v. *Falk Co.*, 147 Wis., 327, 133 N. W., 209, 37 L. R. A. (N. S.), 489.

And it was expressly held in the case of *Young* v. *Sterling Leather Works*, 91 N. J. Law, 289, 102 Atl., 395, in which case the validity of the Workmen's Compensation Act of the State of New Jersey was challenged, that a minor has no such vested right in his disability recognized by the common law as to prevent the Legislature from constitutionally removing such disability with respect to future contracts, and that it had the power to change the age at which the minor is privileged to exercise legal rights which should be binding on him.

It is next said that the act is unconstitutional because it violates section 7 of article 6 of our State Constitution. This section of the Constitution is as follows:

"The judges of the Supreme or inferior courts, shall, at stated times, receive a compensation for their services, to be ascertained by law, which shall not be increased or diminished during the time for which they are elected. They shall not be allowed any fees or perquisites of office nor hold any office of trust or profit under this State or the United States."

Section 32 of the act provides as follows: "For acting in each of such cases which is contested or litigated the county judge or chairman of the county court shall receive a fee of $5, which shall be taxed as a part of the costs of the case against the unsuccessful party. For entering all orders, settlements or compromises of claims which are not controverted or litigated the county judge or chairman of the county court shall receive as compensation a fee of two ($2) dollars, which shall be taxed equally against both parties."

The county judge is a judge of an inferior court, within the meaning of the above-quoted section of the Constitution, and his salary as judge can neither be increased nor diminished during the term for which he is elected. *State v. Glenn,* 7 Heisk., 472; *State v. McKee,* 8 Lea, 24; *State v. Leonard,* 86 Tenn., 490, 7 S. W., 453; *Judges' Cases,* 102 Tenn., 571, 53 S. W., 134.

We are of the opinion, therefore, that this provision of the act is unconstitutional and void, but we are further of the opinion that this infirmity in the act does not affect the validity of the entire act. We think the provision allowing a fee to the county judge or chairman for acting in certain cases may be elided. It is a well-settled rule of

law that where the provisions of a statute are severable
and distinct the unconstitutionality of one or more pro-
visions will not vitiate those that are valid and constitu-
tional. *State ex rel.* v. *Trewitt,* 113 Tenn., 571, 82 S. W.,
480; *Jones* v. *Memphis,* 101 Tenn., 188, 47 S. W., 138;
*McCamey* v. *Cummings,* 130 Tenn., 505, 172 S. W., 311;
*Richardson* v. *Young,* 122 Tenn., 523, 125 S. W., 664;
*Malone* v. *Williams,* 118 Tenn., 439, 103 S. W., 798, 121
Am. St. Rep., 1002.

It is next said that the act is unconstitutional because
of the provisions contained in section 25 thereof, which
require an injured employee to submit to an examination
and accept medical service, and deny to him the right of
compensation so long as he refuses.    Section 25 reads as
follows:

"That during the thirty days after the notice required
by section 23 of this act to be given the employer, or his
agent, the employer shall furnish free of charge to the
injured employee such medical and surgical  treatment,
medicine, medical and surgical supplies, crutches and ap-
paratus as may be reasonably required, and the injured
employee shall accept the same. . . .   The injured em-
ployee must submit himself to the examination by the em-
ployer's physician at all reasonable times if requested to
do so by the employer, but the employee shall have the
right to have his own physician present at such examina-
tion, in which case the employee shall be liable to such phy-
sician for his services. . . .   And in case of dispute
as to the injury, the court may, at the expense of either
party or on its own motion, appoint a neutral physician

of good standing and ability to make an examination of the injured person and report his findings to the court, the expense of which examination shall be borne equally by the parties. If the injured employee refuses to comply with any reasonable request for examination, or refuses to accept the medical services which the employer is required to furnish, . . . his right to compensation shall be suspended and no compensation shall be due and payable while he continues such refusal. . . .

"If in an emergency or on account of the employer's failure or refusal to provide the medical care and service required by this act,. the injured employee or his dependents may provide the same, and the cost thereof, not exceeding $100 shall be borne by the employer."

The plaintiff does not undertake to point out what provision of the Constitution is violated by the provisions of section 25.

We do not think it violates any section of the Constitution. No further discussion of said contention is necessary.

We believe that this disposes of all the specific objections urged by plaintiff to the validity of the act. We are of the opinion that the act is constitutional and valid, except as to the provisions of section 32, relating to the fees of the county judge or chairman of the county court. As hereinbefore indicated, we think this provision of section 32 is invalid and should be elided, and the judgment of the circuit court will be accordingly modified.

The plaintiff will be taxed with the costs of the cause.

Scott v. Nashville Bridge Co.

Justice BACHMAN dissents.   He is of the opinion that the act, exempting as it does coal mine operators and their employees from its operation, is arbitrary, discriminatory, and unreasonable because of this classification.